CYRUS A. BAKER, Appellant, *v.* HARRIET ARNOT et al., Executors, etc., Respondents.

Where one holding securities in pledge for a loan, in pursuance of a sale thereof made by the owner, delivers the same to the purchaser, receives the purchase-price, and after deducting the amount of the loan pays over the residue to the owner, this is not an affirmation by the pledgee of the genuineness of the securities, and, in the absence of fraud, an action cannot be sustained against him by the purchaser to recover back the purchase-price in case the securities prove to be forgeries.

One R. agreed with the agent of defendants' testator A. for a loan for
sixty days upon certain forged railroad bonds.  The agreement was for
a loan of eighty-five per cent on the face of the bonds for sixty days at
one and one-half per cent per month, with seven per cent rebate in case
the loan was taken up before, R. having the privilege of taking it up at
any time.   After the terms of the loan were settled, the agent proposed
that to avoid trouble the bonds should be sold to A. direct, he giving
a contract to sell them back in sixty days for the amount of the loan
and the sum agreed to be paid therefor.   This form of the transaction
was accordingly adopted, the bonds delivered, the money advanced
and the contract signed and delivered on behalf of A.   R. subsequently
contracted to sell the bonds to plaintiff; the bonds were delivered by
A.'s agent, who received the purchase-money, deducted the amount due
A. and paid over the residue to R.   In an action to recover back the
purchase-money, *held*, that whether the loan was usurious or not A.
had no title to the bonds, save as pledgee, the title remaining in R.,
who had the right to sell them and to require A. to deliver at any
time on being paid the loan; that the question of usury was one
between R. and A., which in no manner affected the rights of plain-
tiff; that defendants were not estopped from setting up the real
transaction, because the form of a sale was resorted to to evade the
usury laws; and that they were not responsible for the genuineness of
the bonds.

(Argued November 17, 1876; decided December 12, 1876.)

APPEAL from judgment of the General Term of the
Supreme Court in the second judicial department in favor
of defendants, entered upon an order overruling plaintiff's
exceptions, and directing judgment upon a verdict.

This action was brought to recover the purchase-price
alleged to have been paid by plaintiff to John Arnot, defend-
ant's testator, upon sale by him to plaintiff of what purported
to be bonds of the New York and Erie Railroad Company,
which proved to be forgeries.

The facts sufficiently appear in the opinion.

At the close of the evidence on the trial, the court directed
a verdict for defendants, to which plaintiff's counsel duly
excepted.   A verdict was rendered accordingly.

Exceptions were ordered to be heard at first instance at
General Term.

*A. P. Whitehead* for the appellant. The purchaser having paid the seller for bonds purporting to be genuine, but which were spurious, may recover from the vendor the amount paid therefor. (Story on Sales, § 148, notes 3–7; Benj. on Sales, 492; Kerr on Fraud and Mistake, 58; Add. on Con. [ed. of 1874], 234; Byles on Bills, 324; 2 Pars. on Notes and Bills, 600, and note; *Ketchum* v. *Bank of Commerce,* 19 N. Y., 499; *Whedon* v. *Olds,* 20 Wend., 174; *Westropp* v. *Solomon,* 8 C. B., 345; *Martin* v. *McCormick,* 4 Seld., 331; *Markle* v. *Hatfield,* 2 J. R., 455; *Canal Bank* v. *Bank of Albany,* 1 Hill, 287; *Wilkinson* v. *Johnson,* B. & C., 428; *Kelly* v. *Solari,* 9 M. & W., 54; *Jones* v. *Ryde,* 5 Taunt., 488; *Herrick* v. *Whitney,* 15 J. R., 240; *Gompertz* v. *Bartlett,* 2 E. & B., 849–854; *U. S. Bank* v. *Bank of Ga.,* 10 Wheat., 333; *Merriam* v. *Wolcott,* 3 Al., 258; *Cabot Bank* v. *Martin,* 4 Gray, 156; *Bank of Commerce* v. *Union Bank,* 3 N. Y., 232; *Gurney* v. *Wormersly,* 4 E. & C., 133.) The presumption is that Arnot was the owner of the bonds. (Story on Bail., §§ 296–323; Edwds. on Bail., 93; *Bowman* v. *Wood,* 15 Mass., 534; *Depuy* v. *Clark,* 12 Ind., 432; *Collins* v. *Martin,* 1 B. & P., 648; *Peacock* v. *Rhodes,* 2 Doug., 633; *Hartop* v. *Hoare,* 3 Atk., 50; *Miller* v. *Race,* 1 Burr., 452; *Andrews* v. *Dietrick,* 14 Wend., 31; 8 Cow., 238; *Coddington* v. *Bay,* 20 J. R., 637. *Ketchum* v. *Bank of Commerce,* 19 N. Y., 499.) Arnot being the actual owner of the bonds at the time of the sale, the real seller of them and the real party who delivered them to plaintiff, the court should have directed judgment for plaintiff, or allowed the case to go to the jury on the question of who the seller was. (Story on Bail., §§ 296–323; Edwds. on Bail., 93; *Bowman* v. *Wood,* 15 Mass., 534; 12 Ind., 432; 1 B. & P., 648; 2 Doug., 633; 3 Atk., 50; 1 Burr., 452; 14 Wend., 31; 8 Cow., 238; 20 J. R., 637; 19 N. Y., 499.) If Arnot made the purchase to avoid usury, he became the owner of the bonds, and he cannot plead his own wrong in answer to the allegation that he owned them when they were sold and delivered to plaintiff. (*Montefiori* v. *Montefiori,* 1 Wm. Blk., 364; 2 B. & Ald., 368; 4 Bing., 639;

Broom's Legal Maxims [7th ed.], 737; *Pearce* v. *Brooks*, L. R., 1 Exch., 213, 218; *Cowan* v. *Melbourne*, L. R., 2 Exch., 230.)  John Arnot, Jr., was authorized to make this transaction with Roberts and with plaintiff. (Story on Ag., 114, §§ 252–260; Dunlap's Paley on Ag., 156, note 1.)  Defendants' testator ratified the acts of his agent by keeping the price paid for the bonds by plaintiff, and is estopped from denying that he was the seller.  (Story on Ag., §§ 251, 254; Dunlap's Paley on Ag., 171.)  The tender made of the bond was sufficient. (2 Pars. on Bills, 600, 601; Story on Ag., § 103, *a*, 247, 451.)

*Ira Shafer* for the respondents.  Defendants' testator was not a *bona fide* purchaser of the bonds.  (*Ramsdell* v. *Morgan*, 17 Wend., 574; *Kentgen* v. *Parks*, 2 Sandf., 60; *Felt* v. *Heye*, 23 How. Pr., 350; *Schroeppel* v. *Soule*, 2 Seld., 107; *Schroeppel* v. *Corning*, 5 Den., 236; *Cousland* v. *Davis*, 4 Bosw., 619; 2 R. S. [2d ed.], 290, § 20; *Bakewell* v. *Ellsworth*, 6 Hill, 484; *Wheeler* v. *McFarland*, 10 Wend., 318; *Dykees* v. *Allen*, 7 Hill, 497; *Wilson* v. *Little*, 2 N. Y., 443; *Wheeler* v. *Newbould*, 16 id., 392; *Lewis* v. *Graham*, 4 Abb. Pr., 106; *Garlick* v. *James*, 12 J. R., 146.)  The sale by Roberts, and the receipt by the bank, of the amount borrowed did not make the bank liable as warrantor of the genuineness of the bonds.  (*Morley* v. *Allenborough*, 3 Exch. Ch., 500; *Baker* v. *Arnot*, 5 N. Y. S. C. R., 215; *Ketchum* v. *Bank of Commerce*, 19 N. Y., 499.)

RAPALLO, J.  The allegations upon which this action is based are, in substance, that John Arnot, the testator of the defendants, in July, 1873, sold and delivered to the plaintiff what purported to be twenty-one bonds of $1,000 each, of the Buffalo, New York and Erie Railroad Company.  That they were so sold and delivered by Arnot to the plaintiff, as and for genuine bonds, and the plaintiff believing them to be such, paid Arnot therefor the sum of $19,320, but they were in fact forged, and, therefore, of no value; that on the dis-

covery of this fact the plaintiff tendered them back to Arnot and demanded the return of the purchase-money, which was refused, to the damage of the plaintiff, etc.

The defense was, that the bonds were received by Arnot from one Roberts, as security for a loan to him of the sum of $17,500. That afterward Roberts sold the bonds to the plaintiff, and directed Arnot's agent, with whom they were deposited, to deliver them to the plaintiff in pursuance of such sale. That Arnot's agent thereupon went with Roberts to the office of the plaintiff, and delivered the bonds to him, and received the price, and after deducting the amount due on the loan, paid over to Roberts the residue of the purchase-money. That Arnot had no other title to the bonds than above stated, and did not make the sale to the plaintiff.

There can be no doubt of the sufficiency of this defence if established by the evidence. If Arnot was merely pledgee of the bonds he was bound to deliver them to whomsoever Roberts might direct, on receiving payment of the loan, and was entitled, upon such delivery, to receive the proceeds, or at least so much of them as might be necessary to pay the loan. The fact that the whole proceeds were paid to him and that he paid them over to Roberts, after deducting the amount due on the loan, can make no difference. If the bonds were delivered by direction of Roberts and in pursuance of a sale made by him, such a delivery did not constitute any affirmation by Arnot of title in himself, or of the genuineness of the bonds. Were authority needed for this proposition the case of *Ketchum* v. *Bank of Commerce* (19 N. Y., 499) would seem to support it. Of course, it is to be assumed that there was no fraud on the part of Arnot, and none is alleged.

The plaintiff called as a witness Roberts, who testified that he applied to Mr. Cole, of the firm of Elisha Cole & Co., who were agents of Arnot, for a loan upon the bonds. That on the next day Mr. Cole introduced him to John Arnot, Jr., also an agent of John Arnot, deceased, who then agreed to make the loan, and the transaction was completed. Roberts further testified, on plaintiff's examination, that the transac-

tion was, that he borrowed of Arnot $17,500, for sixty days, on the bonds, agreeing to pay him $350, making $17,850, but that Arnot, after agreeing to make the loan, and upon the terms, said he would not like the trouble, in case witness did not take up the loan, of looking him up and bothering with it, and proposed that witness should sell the bonds to him direct, and he, Arnot, would give a contract to sell them back at any time within sixty days, and thereupon Arnot delivered to him a contract, in the following words : " I hereby agree to sell to P. B. Roberts twenty-one first mortgage bonds of the Buffalo, New York and Erie Railroad company, of one thousand dollars each, for the sum of seventeen thousand eight hundred and fifty dollars, sixty days from date." That Roberts thereupon delivered the bonds to Arnot, who advanced the $17,500. That witness understood it to be a loan. This transaction occurred on the 1st day of July, 1873. On his cross-examination the witness further testified that it was also agreed at the time, that if he paid off the loan before the end of the sixty days Arnot was to allow him seven per cent.

Mr. Cole, another witness, called by the plaintiff, also testified to the effect that the transaction was a loan.

The plaintiff further gave in evidence a conversation with John Arnot, Jr., on the occasion of a demand made upon him for the money which plaintiff had paid for the bonds, in which conversation Arnot, Jr., said that he hadn't any thing to do with the bonds but had loaned some money on them, and on witness calling his attention to the fact that he had bought them he said, further, " well, that is true, perhaps, but that was done for the purpose of avoiding usury."

The foregoing is the substance of all the evidence given on the part of the plaintiff, with respect to the title of Arnot to the bonds. The defendants called Mr. Wood, of the firm of Elisha Cole & Co., who corroborated the statements of Roberts as to the agreement for the loan. They also called John Arnot, Jr., who testified that he agreed to lend Roberts eighty-five per cent on the bonds for sixty days, at one and a

half per cent. per month, with seven per cent rebate, in case he took up the loan before, Roberts having the privilege of taking it up at any time. That no price was fixed on the bonds with reference to purchasing, and that the reason he stated to Mr. Roberts for making the agreement in evidence, was, so that in case the loan was not paid off he might sell the bonds without giving notice; that it was a mere form resorted to, and there was no idea of purchasing. The evidence in the case showed that the bonds were, at the time, worth about ninety-two in the market.

Upon this uncontroverted state of facts we are of opinion that it is clearly established that Arnot had no title to the bonds, except as pledgee, and that the title remained in Roberts and he had the right to sell them, and to require Arnot to deliver them at any time, on being paid the amount of the loan, and that, had the loan remained unpaid after the sixty days, Roberts would still have had the right to redeem them, without regard to the question of usury.

But the plaintiff claims that the loan being usurious, and the form of a sale having been resorted to for the purpose of evading the usury law, the defendants are estopped from setting up the real transaction, for the purpose of showing that Arnot was not the absolute owner. We do not regard this proposition as sound. If it had been necessary to the defendants' case to establish the usury, for the purpose of showing a want of title in Arnot, there might be some force in the position of the plaintiff's counsel. But in this case it is immaterial to the defense whether the loan was usurious or not; the question was whether the transaction between Arnot and Roberts was a pledge or a sale. If Arnot would not have acquired a title to the bonds, had the loan been free from usury, he certainly acquired no stronger one from the fact of the loan being usurious.

Nor did that circumstance diminish his obligation to deliver the bonds to any person whom Roberts might designate. The usury was a matter between Arnot and Roberts, which in no manner affected the rights of the plaintiff.

It being established that Arnot had no title to the bonds, except as pledgee, the next question is whether the sale to the plaintiff was made by Arnot or by Roberts. The uncontroverted evidence shows that on the second of July, the day after the loan, Roberts requested Cole & Co., and Arnot, Jr., to sell the bonds, and they emphatically refused to do so, Arnot, Jr., saying that he was satisfied with the loan as it was, and did not wish to pay the rebate. Roberts then said he would sell them himself. He applied to Haskin & Braine, brokers, to make the sale, and they employed one Schuzer, informing him that the delivery would be made by Elisha Cole & Co. Schuzer negotiated the sale of the bonds to the plaintiff at ninety-two per cent, and informed him that they would be delivered by Cole & Co. The plaintiff drew his check for the whole purchase-price, $19,320, to the order of his cashier, who indorsed it to Elisha Cole & Co. Roberts notified Cole & Co. that he had sold the bonds, and requested them to make the delivery to the plaintiff. Mr. Wood, of the firm of Elisha Cole & Co., thereupon took the bonds and went with them, in company with Roberts, to the office of the plaintiff, and there delivered them to him, receiving the check for $19,320. The plaintiff, on that occasion, made some inquiry of Wood about the bonds and he referred him to Roberts. There are some slight discrepancies in the testimony as to what was then said, but they are not material. It is perfectly clear that Wood did not assume that he or Elisha Cole & Co. were the owners or sellers of the bonds. On the contrary, the plaintiff himself testifies that on this occasion, and while the bonds were being examined, he said to Mr. Wood, " I suppose, you know these bonds to be all right." He said, " I have no interest in them, but, Mr. Roberts here knows all about them." Then plaintiff said, as he turned away, " Of course I should hold you if there is any thing wrong about them." What, if any thing, Wood said in reply, does not appear.

After receiving the check for $19,320 Wood delivered it to

Arnot, who gave his check to Roberts for $1,671.07, being the surplus after paying the loan.

These facts show clearly that Arnot was not the seller of the bonds. He was not bound to intrust them to Roberts for delivery, but was entitled to retain control of them till his loan was paid. The delivery by him was not, therefore, inconsistent with his position as pledgee. The proceeds being all in one check Cole & Co. were justified in taking it, for the purpose of retaining out of it the amount due their principal. If the plaintiff desired to know on whose behalf the sale was made he could readily have done so by inquiry. Not having made the inquiry and nothing having been done to mislead him, he must abide by the facts actually existing, and upon these facts he could not hold Arnot responsible, as warrantor of the genuineness of the bonds.

The judge, at the trial, was, therefore, right in nonsuiting the plaintiff, and the judgment must be affirmed.

All concur.

Judgment affirmed.