GUARANTY TRUST CO. OF NEW YORK v. GROTRIAN et al.

(Circuit Court of Appeals, Second Circuit. February 4, 1902.)

No. 37.

DRAFTS—CONDITIONAL ACCEPTANCE—ACCOMPANYING FORGED BILLS OF LADING.

A draft directed the drawee to pay, and to charge the same to account of certain flax seed, forged duplicate bills of lading for which were attached to the draft. The acceptance was, "Accepted * * * against indorsed bills of lading" for the flax seed. Before arrival of the steamship on which was the flax seed, according to the bills of lading, and without knowledge that it was not there, or that the bills of lading were forged, the acceptor paid the draft. *Held*, that acceptance was conditioned on delivery of genuine bills of lading, and that this condition was not waived by payment without knowledge of the facts; so that, in the absence of special equities, the acceptor could recover the money paid.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error by defendants below to review a judgment overruling a demurrer to the complaint and directing judgment for the plaintiff. 105 Fed. 566.

Julian T. Davies, for plaintiff in error.

Arthur J. Baldwin, for defendants in error.

Before WALLACE and LACOMBE, Circuit Judges, and TOWNSEND, District Judge.

TOWNSEND, District Judge. John Glen, of New York City, drew a draft upon Grotrian & Co., plaintiffs, in these words:

"Frederick B. Grotrian & Company, New York. 1911.
"Exchange for £1,518. 8. 7 stg. 11 Nov., 1898.
"Sixty days after sight of this first (second unpaid) pay to my order in London fifteen hundred and eighteen pounds 8. 7 sterling, value received, and charge the same to account of 8,417.50 bush. flax seed.
"John Glen.
"To F. B. Grotrian & Co., Hull."

To this draft he attached forged duplicate bills of lading for the flax seed mentioned in the draft, and on the same day he cashed the draft with defendant. The defendant, 10 days later, presented to the plaintiffs for acceptance the draft accompanied by the forged bills of lading and an insurance policy. The plaintiffs accepted the draft in these words:

"Hull, 21st Nov., 1898.
"Accepted, payable at Lloyd's Bank, Ltd., London, against indorsed bills of lading for 8,417 bushels of flax seed per Buffalo S. S. at New York & Certificate of Insurance $8,500.
"Fred. B. Grotrian & Co.
"Due 22nd Jan., 1899."

There was no representation as to the genuineness of the bill of lading. At the time of the presentation of the draft for acceptance the steamship Buffalo had not arrived at Hull, England, but was in transit. A few days before her arrival the plaintiffs, in order to procure possession of the goods immediately upon arrival, took up the draft, and paid to the defendant, Glen's assignee, $7,319.29. Plaintiffs, at the time of said acceptance and payment, believed the bills of lading to be genuine, and that the flax seed was on the steamship. There was no such flax seed on the steamship, and immediately upon discovering the fraud plaintiffs notified the defendant, and have since duly tendered to defendant the draft, bills of lading, and insurance policy, and have demanded repayment of the $7,319.29. Defendant insists that the acceptance of the draft bound the plaintiffs absolutely without regard to the genuineness of the bills of lading, and that, whether or not defendant could have recovered judgment against plaintiffs if payment of the draft had been refused, the money paid by them cannot be recovered back. It is not disputed that the unconditional acceptance of a draft accompanied by a paper purporting to be a bill of lading, but fictitious, binds the acceptor in ordinary cases, as between him and the payee, where both parties are ignorant of the fraud, even though the payee has cashed the draft for the drawer before presenting it for acceptance to the drawee. In the case at bar, however,

plaintiffs rely on the direction in the draft to charge the amount to account of the flax seed, and the acceptance "against indorsed bills of lading." The defendant insists that by "bills of lading" in the acceptance is to be understood the papers in the form of a bill of lading accompanying the draft, and that, even if the plaintiffs had delayed payment of the draft until its maturity, whereby the fraud would have been discovered before payment, defendant could nevertheless have sued and recovered judgment; and this preliminary question is of vital importance. No case precisely in point has been cited. In Smith v. Vertue, 30 Law J. C. P. 59, it was said that an acceptance substantially like that of the plaintiffs was conditional, and that the bill of lading must be delivered to enable payee to recover; but no question of genuineness was involved, and the statement is obiter. The principal cases on this subject in the United States courts are Hoffman v. Bank, 12 Wall. 181, 20 L. Ed. 366; Goetz v. Bank, 119 U. S. 551, 7 Sup. Ct. 318, 30 L. Ed. 515. In Hoffman v. Bank bills of exchange accompanied by forged bills of lading were discounted by a bank, and subsequently accepted by the drawees. The drawers of the bills had been accustomed to ship flour to the plaintiffs, who, at the request of the drawers, and on their representations that the flour mentioned in the bills of lading had been shipped to their firm for sale, promised to accept them, and did accept them on presentation. The acceptors paid the bills, and, on learning of the forgery of the bills of lading, tendered the same, with the bills of exchange, to the bank, and, repayment being refused, brought suit. The court refers to the argument that the plaintiffs accepted the bills of exchange upon the faith and security of the bills of lading attached to the same, and says:

"It is not perceived that the concession, if made, would benefit the plaintiff, as the bills of exchange are in the usual form, and contain no reference whatever to the bills of lading: and it is not pretended that the defendants had any knowledge or intimation that the bills of lading were not genuine." And again: "Beyond doubt the bills of lading gave some credit to the bills of exchange beyond what was credited by the pecuniary standing of the parties to the same; but it is clear that they are not a part of those instruments, nor are they referred to, either in the body of the bills or in the acceptance, and they cannot be regarded in any more favorable light for the plaintiffs than as collateral security accompanying the bills of exchange."

In Goetz v. Bank—a similar case—the court cites with approval the doctrine in Hoffman v. Bank that, supposing the plaintiffs accepted the bills of exchange upon the faith and security of the bills of lading attached, that fact would not benefit them, as the bills of exchange were in the usual form, and contained no reference whatever to the bills of lading. In most of the cases of acceptance of drafts accompanied by forged bills of lading, cited by defendant, there were special circumstances influencing the equities between the parties, as that the acceptor was the regular correspondent of the drawer, and had been accustomed to accept such drafts from him, or had authorized the making or discounting of the drafts, and in all of said cases the acceptance was unconditional. In the present case, no facts are alleged which establish an equity in favor of the payee against the acceptor. Defendant might have refused to receive any acceptance

other than an absolute one. In fact, Glen had given it a written as-signment of the draft, in which it was particularly stated that it might exercise this option. The request to pay was conditioned upon the delivery of the flax seed, and plaintiff's acceptance of the draft was conditioned upon the delivery of the indorsed bills of lading for it. The payment of the draft before the arrival of the steamer does not justify a construction of the entirely intelligible words "indorsed bills of lading" as importing "documents purporting to be indorsed bills of lading," or as importing documents in the form of bills of lading at-tached to this draft.

It is contended that the equities are equal, and therefore that the party having the money should retain it. This would have been the case if the acceptance had been unconditional. Defendant first paid the money and received the forged documents. But, under their con-ditional acceptance, plaintiff had a right to genuine documents and to rely on the genuineness of those delivered upon the discharge of their obligation. The precedents cited by defendant of waiver of condition by payment without performance of the condition are cases where the party paying knew at the time of payment that the condition had not been performed. Here both parties supposed that it was performed, and no such waiver can be inferred. There was no relinquishment of any right, for the parties were ignorant of the facts. A waiver is an intentional relinquishment of a known right. Transfer of valid bills of lading would have been equivalent to delivery of the flax seed.

Finally, defendant contends that this is a case where a pledgor had given an order to a third party to receive the security upon payment of the debt, and that the party paying cannot recover back the money from the pledgee on the ground that the security was found to be valueless; and cites Ketchum v. Stevens, 19 N. Y. 499; Baker v. Arnot, 67 N. Y. 448; and Aiken v. Short, 37 Eng. Law & Eq. 592. In each of these cases the court held that under the particular cir-cumstances the plaintiff paid the debt as the agent of the original debtor, and that the transaction was, in effect, a redelivery of the security to the original pledgor, and a subsequent transfer by him to the plaintiff. But in the present case the plaintiffs qualified their ac-ceptance so as to make it dependent upon the shipment of the flax seed and the genuineness of the bill therefor. They paid the money, not on the original contract of the drawer, but upon the new contract created by their conditional acceptance, and the assent thereto of de-fendant. In Aiken v. Short, cited at length in Ketchum v. Stevens, which is relied on in Baker v. Arnot, Baron Bramhall said:

"It seems to me that the right to recover money paid under a mistake of fact must have reference to a belief in the existence of a fact which, if true, would have given the person receiving a right against the person paying the money."

The case at bar falls within this rule. The acceptance herein was conditioned upon receipt of bills of lading, which, however, were forged, and therefore nullities, unless some intervening right should arise,—as by estoppel, agency, or otherwise. It is true, the payment was prematurely made, but no intervening rights or liabilities were ac-quired or imposed. Defendant had no rights under the forged papers,

and, if he had any, they would not have been prejudiced. Munger v. Shannon, 61 N. Y. 251; Brill v. Tuttle, 81 N. Y. 454, 37 Am. Rep. 515. The judgment is affirmed.