MARY ANN HAWKINS *vs.* JOSEPH JAMROG.

Hampshire. September 16, 1931. — December 28, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Damages*, In contract. *Sale*, Of food: implied warranty. *Food. Practice, Civil*, Auditor.

An auditor, to whom was referred, under an agreement that his findings of fact should be final, an action of tort or contract by a woman, the proprietor of a boarding house conducted for college students, against a vendor of dressed turkeys, for damages resulting from the sale of unwholesome food, found that turkeys in October were sold to the plaintiff by the defendant with the knowledge that they were to be used for food in her boarding house; and that they were unwholesome; that the plaintiff had seventy boarders; that the unwholesome turkeys caused sickness of the plaintiff, all the student waiters and almost all of the boarders; that many boarders left and the student waiters were unable to get them to return during the college year; that the action of

the boarders "in leaving and refusing to return . . . was the direct result of their having been made ill by partaking of the turkey meat for food"; that the reputation of the plaintiff's boarding house before the use of the food sold her by the defendant was good, but that afterwards it was bad as a direct result of her having served to her boarders the unsound and unfit turkeys purchased from the defendant. The auditor found what was the average weekly profit of the plaintiff per boarder, the number of boarders lost and the entire loss suffered by the plaintiff. The judge refused to allow damages for loss of profits, ruling "that the loss of profits is too remote and speculative to be allowed as an element of damage. College students may change their boarding places many times before the close of the college year and for a variety of reasons." Upon exceptions by the plaintiff, it was *held*, that

(1) It being agreed that findings of fact of the auditor should be final, it was not within the powers of the judge to review such findings;

(2) Upon the facts found, the plaintiff's loss of prospective profits was not as a matter of law too remote to be allowed as an element of damage;

(3) The plaintiff's loss of prospective profits, as found by the auditor, could not properly be said as matter of law to have been merely speculative or so conjectural in its nature that proof thereof was impossible;

(4) The habits of college students in a particular college community with respect to changing their boarding places are not matters of such common knowledge that it properly could have been ruled as matter of law that it was not possible for the auditor to find with a reasonable degree of certainty that the plaintiff, but for the defendant's breach of warranty, would have retained throughout the college year substantially the number of boarders with which she began the year;

(5) Judgment was ordered entered for the plaintiff in a sum which included the loss of profits found by the auditor.

TORT OR CONTRACT. Writ dated April 15, 1930.

In the Superior Court, the action was referred to an auditor whose findings of fact were to be final. Material facts found by him are stated in the opinion. There was a hearing of the action upon the auditor's report by *W. A. Burns*, J. Rulings by the judge are stated in the opinion. There was a finding for the plaintiff in the sum of $300. The plaintiff alleged exceptions.

*D. H. Keedy*, for the plaintiff.

*S. J. Vanderlick*, for the defendant.

FIELD, J. This is an action for breach of an implied warranty of fitness for food of certain slaughtered turkeys

sold by the defendant to the plaintiff. See G. L. c. 106, § 17 (1). The case was referred to an auditor whose findings of fact by agreement of the parties were to be final.

The auditor found that the defendant sold dressed turkeys to the plaintiff for use as food in the boarding house which she conducted for college students, with the knowledge on the part of the defendant that the turkeys were to be used by the plaintiff as food for herself and her boarders, and with the implication that the turkeys "when delivered should be sound, wholesome and fit to be eaten," that these turkeys were served at a Sunday dinner in the middle of October to seventy boarders, that the plaintiff, all her student waiters, and almost all her boarders became sick as the direct result of eating the turkey meat, that the next day only twenty-five of the boarders returned to be served with food, that the plaintiff continued her business during the remainder of the college year to the middle of June with only thirty boarders, that the student waiters, in accordance with custom, "endeavored by solicitation of the boarders who had left to induce them to return to the plaintiff's house and to board there again, but without success," and that the action of the boarders "in leaving and refusing to return . . . was the direct result of their having been made ill by partaking of the turkey meat for food at the Sunday dinner in question." The auditor found "that the reputation of the plaintiff's boarding house among the student body . . . before the Sunday in question was good . . . that thereafter the reputation of her boarding house as a place where good and wholesome food could be had was very bad and . . . this reputation became general among the members of the student body of the college . . . that this change in reputation of her boarding house was the direct result of her having served to her boarders the turkeys purchased from the defendant, and was caused by the fact that said turkeys were not sound and fit to be eaten or served as food . . . that [her] . . . average weekly profit per boarder was about $2, and that if she can recover in this action at law against the defendant she is entitled to the sum of $2,000 for loss of the reasonable profit which she

would have realized from the forty boarders who left about the middle of October, 1928, and did not thereafter board with her to the end of the school year about the middle of June, 1929." The auditor found, also, that in addition to this loss the plaintiff was entitled to the sum of $200 for permanent injury to the reputation of her boarding house, and $100 for personal injury resulting from her own illness.

The judge ordered judgment for the plaintiff for $300 and ruled "that the loss of profits is too remote and speculative to be allowed as an element of damage. College students may change their boarding places many times before the close of the college year and for a variety of reasons." The plaintiff excepted to this ruling and to the order that judgment be entered for $300 only, instead of $2,300. The only question argued is the amount of damages.

Judgment should have been entered for $2,300, including $2,000 for loss of profits. The judge could not review the auditor's findings of fact since under the order of reference to him they were to be final (*Lunn & Sweet Co.* v. *Wolfman,* 268 Mass. 345, 349), and he could not properly rule as matter of law "that the loss of profits is too remote and speculative to be allowed as an element of damage."

The plaintiff's loss of prospective profits, if proved, was not too remote to be allowed as an element of damage. G. L. c. 106, §§ 58 (6), 59. *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547, 555. *Neal* v. *Jefferson,* 212 Mass. 517, ·523–524. *Swain* v. *Schieffelin,* 134 N. Y. 471. See also *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 379–380; *Parker* v. *S. G. Shaghalian & Co. Inc.* 244 Mass. 19, 22. In *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 445–446, it was said that "Upon any breach of contract, whether of warranty or otherwise, the defendant is liable for whatever damages follow . . . which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of a breach of it." See also *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547, 555. The loss to the plaintiff of her boarders and the consequent loss of profits from her boarding house reason-

ably might be supposed to have been within the contempla-
tion of the parties when the turkeys were sold to the plain-
tiff by the defendant if, at that time, "they had taken
thought of the consequences likely to ensue." *O'Brien* v.
*Worcester,* 172 Mass. 348, 354.

The plaintiff's loss of prospective profits, as found by the
auditor, cannot be said as matter of law to have been
merely speculative. · Obviously the amount of the loss
could not be ascertained as definitely in this case as in the
case of *Parker* v. *S. G. Shaghalian & Co. Inc.* 244 Mass. 19.
But mathematical accuracy of proof was not required.
"There may be elements which can be determined only by
approximation, and which may be in some degree contingent
or matter of opinion; and yet the damages as a whole may
be measured by a standard as definite as that by which in
the nature of things courts and juries must be guided in
reaching results in many instances." *Randall* v. *Peerless
Motor Car Co.* 212 Mass. 352, 380. The record does not
disclose that this requirement of proof as applied to the
plaintiff's loss of prospective profits was not met. Nor
could it have been ruled that such loss of profits was so
conjectural in its nature that proof thereof was impossible.
Since the evidence was not reported, nor required to be, the
question whether it supported the finding of the amount of
prospective profits was not before the judge and is not
before us. No other or subsidiary findings are inconsistent
with the auditor's conclusion. Clearly the number of
boarders who left the boarding house because of the defend-
ant's breach of warranty, and could not be induced by
customary methods to return, was susceptible of proof.
Nor was a fairly accurate estimate of the average weekly
profit from each boarder outside the realm of possible
proof. See *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass.
547, 556. The element of conjecture in the finding, sug-
gested by the judge, was whether, if the episode of the
unfit turkeys had not occurred, the plaintiff would have
retained her boarders throughout the college year. We do
not know what evidence on this point was before the audi-
tor. Doubtless the matter was in the field of approximation

and opinion, and contingencies might have arisen which would have caused boarders to leave the boarding house. See *Neal* v. *Jefferson,* 212 Mass. 517, 524. We think, however, that the habits of college students in a particular college community with respect to changing their boarding places are not matters of such common knowledge that it could have been ruled as matter of law that it was not possible for the auditor to find with a reasonable degree of certainty that the plaintiff, but for the defendant's breach of warranty, would have retained throughout the college year substantially the number of boarders with which she began the year. The finding of the auditor is not inconsistent with the recognition by him of a chance of some reduction in the number of the plaintiff's boarders for reasons other than the defendant's breach of warranty. The conjectural elements were more marked in the cases in this jurisdiction relied on by the defendant than in the case at bar. See *Lowrie* v. *Castle,* 225 Mass. 37, 52, and cases cited; *Narragansett Amusement Co.* v. *Riverside Park Amusement Co.* 260 Mass. 265, 281, and cases cited.

The plaintiff's exceptions must be sustained and judgment entered for her in the sum of $2,300 with interest from the date of the writ. G. L. c. 231, § 124. *Walsh* v. *Cornwell,* 272 Mass. 555, 562, 565.

*So ordered.*