COUNTRY CLUB SODA COMPANY, INCORPORATED, *vs.* JOHN
ARBUCKLE & another.

Hampden.   September 17, 1931. — May 18, 1932.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Sale,* Warranty, Rescission.   *Evidence,* Presumptions and burden of
proof, Competency, Inference.   *Waiver.   Damages,* In contract.
*Proximate Cause.*

Upon evidence at the hearing by a judge without a jury of an action of
contract, by a corporation against one who sold to it a car load of
one hundred twenty barrels of sugar described as "fine granulated
sugar," for breach of warranties of merchantable quality and of fit-
ness for use in the manufacture of beverages, it was *held,* that

(1) Evidence of previous dealings and correspondence between the
parties, which warranted an inference that the defendant knew that
the plaintiff was a manufacturer of beverages, and of a complaint in
writing by the plaintiff received by the defendant before acceptance
of the order for the sugar in question and before it was shipped, stat-
ing that some sugar previously shipped contained foreign matter
which looked "like black soot" and "clogs our filters more than ever,"
and expressing a wish that "there won't be any dirt" in the sugar to
be shipped on the order then pending, warranted findings that before
any sale, or contract of sale, was made by the defendant the plaintiff
made known to the defendant, by implification if not expressly, that
the particular purpose for which the sugar in question was required
was the manufacture of syrups for use in making beverages, and that
it relied on the defendant's skill and judgment to furnish fine granu-
lated sugar, reasonably fit for such purpose so far as the absence of
foreign matter was concerned;

(2) The judge was justified in concluding that the words, "fine
granulated," as applied to sugar, were words of description and not a
patent or trade name within the meaning of G. L. c. 106, § 17 (4),
which therefore was not applicable;

(3) It could not be said as matter of law that the words, "fine
granulated," so exactly defined the sugar bought by the plaintiff as
to control the evidence of reliance upon the defendant's skill and
judgment to furnish sugar within this description reasonably fit for
the plaintiff's purpose;

(4) Evidence warranting findings that such sugar contained insects
and other foreign matter, that the insects were not in it when it was
delivered to the carrier but that the other foreign matter was and was
"in excessive quantity, or quantity more than was reasonably to be
expected," warranted a finding that the sugar delivered by the de-
fendant to the plaintiff was not of merchantable quality and was not
fit for the particular purpose for which it was bought;

(5) Evidence that the plaintiff, before the examination of the sugar

by a chemist employed by it, complained to the defendant only of the presence of insects therein, and testimony of witnesses for the plaintiff tending to minimize the extent and harmful character of the other foreign matter in the sugar, did not preclude the judge from making findings of such lack at the time of the sale of merchantable quality and unfitness;

(6) In view of the contradictory nature of the evidence, the plaintiff was not bound by testimony of certain of its witnesses unfavorable to its case, such testimony not having the effect of an admission and the evidence as a whole being open to more than one construction.

At the hearing of the action above described, it appeared that the plaintiff paid for the entire car load of one hundred twenty barrels of the sugar within a few days after its receipt, opened some of the barrels and discovered, in the folds of the paper that lined them and to some extent in the sugar itself, both live and dead insects; that a sample of the sugar containing insects immediately was sent to the defendant with a complaint about the insects only; that, without waiting for a reply, the plaintiff on the day the barrels were first opened, emptied the contents of eleven barrels into its melters and converted the sugar into syrup; that the filter bags showed an unusually large quantity of foreign matter other than insects; that the plaintiff a few days later sent a sample of unmelted sugar to its chemist, but on the same day emptied the contents of four more barrels into its melter; and that samples were taken from another barrel, as to which barrel the plaintiff made no contention as to damages. The chemist's report as to the insects and the unusual amount of other foreign matter followed. *Held*, that

(1) Payment for the car load of sugar in such circumstances did not amount to a waiver of any breach of warranty;

(2) Conclusions by the judge, that the "foreign matter other than insects constituted a latent defect," that the plaintiff "had a right to rely to some extent at least upon the assumption that such foreign matter was not present in the sugar in excessive quantities," and that "in converting the first eleven barrels of sugar into syrup the plaintiff did not waive its right to damages for breach of warranty not reasonably discoverable until the syrup had gone through the filters," were justified;

(3) It could not be said as a matter of law that a finding by the judge, as to the other four barrels of sugar, that the plaintiff in melting them into syrup "after it had reason to know that there was an excessive quantity of foreign matter, other than insects, in the sugar . . . waived or is estopped from asserting any right it might or would otherwise have had to claim damages for breach of an implied warranty of fitness for a particular use," was not warranted.

In the action above described, it appeared that, after the complaint by the plaintiff, it returned one hundred four barrels of the sugar and the defendant returned the price previously paid therefor. The judge concluded "that the virtual rescission of the contract as to one hundred four barrels was not intended by the parties to affect any right the plaintiff might have to damages for breach of any warranty in

the sale of the sugar not returned." *Held,* that the judge's conclusion meant that there was not a technical rescission of the sale, but rather that there was an independent adjustment of differences between the parties with respect to the one hundred four barrels of sugar returned by the plaintiff, leaving the matter of the other sixteen barrels for further settlement, and such conclusion was proper: the entire contract was not rescinded.

A finding by the judge, in the circumstances above described, in effect that, as to the four barrels last used, there were no "special circumstances showing proximate damage of a greater amount" than the difference between the actual value of the sugar and the value it would have had if answering to the warranty, could not be said as a matter of law to have been wrong, and a consequent finding assessing as damages as to such four barrels the difference between the contract price of the sugar and its actual value, was proper.

In the action above described, the judge found, upon evidence warranting the finding, that he was "unable to determine on the evidence what the cost was of converting eleven barrels of sugar into syrup, and" that he therefore was "compelled to find that the only damage the plaintiff has proved by reason of breach of warranty of fitness as to the eleven barrels [first used], was their cost, or as the sales act puts it, the value they would have had if they had conformed to the warranty"; that the "natural and probable consequence of the defendant's breach of the implied warranty of fitness for a particular use . . . attached to the eleven barrels of sugar used before the breach was discovered, was the loss of the syrup made from that sugar," that the "syrup, if it had been fit for use in the manufacture of beverages, would have had a value equal to the cost of the sugar, plus the cost of converting it into syrup"; that the sugar in the eleven barrels "apart from the presence of insects, insects' eggs and parts of bodies" therein, was not fit for human consumption. *Held,* that

(1) A further finding that the loss of the syrup resulted from the breach of warranty of fitness was justified;

(2) Such conclusion was not dependent upon a finding that the "beverages manufactured from the sugar spoiled, and had to be dumped," and consequently was not vitiated by a finding that the cause of the spoiling of the beverages was conjectural;

(3) The fact that, after discovering the presence of an excessive amount of foreign matter other than insects in the sugar, the plaintiff "continued without delay to complete the manufacture of the syrup into beverages and to bottle and prepare them for sale," showed that it did so at its own risk, and precluded a conclusion that the loss of such beverages resulted "directly and naturally . . . in the ordinary course of events" from the breach of warranty of fitness by the defendant under G. L. c. 106, § 58 (6), (7); § 59;

(4) The finding that the only damages the judge could assess as to such eleven barrels was the contract price, the value which the sugar would have had if it had conformed to the contract, was proper.

A contention by the defendant in the action above described that the plaintiff had not proved any damages because it had not proved the

value of the sugar with the other foreign matter but without the insects for which the defendant was not responsible, was without foundation, because the judge found that such excessive quantity of foreign matter rendered the sugar and the syrup made from it unfit for human consumption, and it could not be said as matter of law that the judge could not reasonably infer that no further reduction in value resulted from the presence of the insects.

In the circumstances and upon the findings above described, the plaintiff was not entitled to recover profits which would have resulted from sale of beverages which were intended to be manufactured from the sugar.

In view of the findings of the judge who heard the action above described, admission of evidence of the quantity of beverages manufactured from the sugar in question and the cost of manufacturing such beverages did not harm the defendant.

CONTRACT for damages resulting from breach of warranties in the sale of sugar by the defendants to the plaintiff. Writ dated November 26, 1928.

In the Superior Court, the action was heard by *Broadhurst*, J., without a jury. Evidence before him, and rulings and findings made by him are described in the opinion. There was a finding for the plaintiff in the sum of $251.30. Both parties alleged exceptions.

The case was submitted on briefs.

*H. M. Ehrlich & J. L. Dowd*, for the plaintiff.

*J. P. Kirby & E. S. Searle*, for the defendants.

FIELD, J. This is an action for breach of warranties of fitness and of merchantable quality of sugar sold by the defendants, refiners in the State of New York, to the plaintiff, a manufacturer of beverages in this Commonwealth. The answer was a general denial and waiver. The case was heard by a judge sitting without jury, who made specific findings of fact and found for the plaintiff. It is before us on the exceptions of the defendants to the admission and exclusion of evidence, and to the judge's rulings, refusals to rule as requested and denial of the defendants' motion that he find for them, and on the exceptions of the plaintiff to rulings and refusals to rule as requested by it.

The defendants shipped by rail to the plaintiff in Springfield, on its order, a car load of fine granulated sugar containing one hundred twenty barrels. The plaintiff paid for the car load, used fifteen barrels, retained another barrel

from which samples were taken for examination, and re-shipped to the defendants the other one hundred four barrels. The defendants paid to the plaintiff the contract price of the sugar returned, and the freight thereon.

The judge found that the sugar was sold to the plaintiff with an implied warranty of fitness and an implied warranty of merchantable quality, that there were breaches of these warranties, that as to four barrels there was a waiver of the breach of warranty of fitness, but as to eleven barrels there was no such waiver, and that the contract was not rescinded.

It was found that the amount of the damages as to four barrels of sugar used (and the barrel from which samples were taken) was the difference between the contract price — the value it would have had at the time of delivery to the carrier for the buyer if it had conformed to the warranty of merchantable quality — and its actual value. As to the other eleven barrels used it was found that the natural and probable consequence of the breach of the implied warranty of fitness was the loss of the syrup made from that sugar, and that this syrup if it had been fit for use in the manufacture of beverages would have had a value equal to the cost of the sugar and the cost of converting it into syrup, but, since the judge was unable to determine the cost of such conversion, he found that the only damage proved by reason of the breach of warranty of fitness was the contract price — the value which this sugar would have had if it had conformed to this warranty.

The defendants contend that the plaintiff cannot recover any damages in this action. They contend that the evidence did not warrant a finding that there was an implied warranty of fitness of any of the sugar, but warranted only a finding that there was an implied warranty of merchantable quality; that the evidence did not warrant a finding that there was a breach of either warranty; that, if there was any breach of warranty, it was waived by the plaintiff, and that by the return of the one hundred four barrels by the plaintiff and the acceptance of them by the defendants with repayment of the purchase price the contract was

rescinded. They contend, moreover, that if the plaintiff can recover at all it can recover as damages only the difference between the value which the sugar would have had if there had been no breach of warranty and its actual value. The plaintiff, on the other hand, contends that it is entitled to recover in this action the cost of the product made from the fifteen barrels of sugar and prospective profits.

The judge found, in accordance with an agreement of the parties, that the law of sales in New York as set forth in the sales act and the decisions of the courts of that State is the same as in Massachusetts.

1. The evidence warranted a finding that there was an implied warranty of fitness of the sugar for the manufacture of beverages.

There was evidence that the plaintiff, through a sugar broker, on June 26, 1928, ordered from the defendants one hundred twenty barrels of fine granulated sugar, delivery to be complete on receipt of the goods by the carrier, that the plaintiff received an invoice therefor dated July 6, 1928, and that the sugar was placed in a freight car in Brooklyn — and thus, as is agreed, delivered to the plaintiff — between 1:00 and 2:00 P.M. on that day. (It appeared that fine granulated sugar, as the term is used in the trade, means a certain size of granulated sugar.) There was evidence, also, that the plaintiff had done business with the defendants for several years before the purchase in question and, earlier in the year 1928, had received a car load of sugar from them. A letter dated July 18 from the defendants to the plaintiff in reply to complaints by the plaintiff of the condition of the sugar now in question, taken in connection with other evidence in the case, disclosed by fair inference that the defendants knew at the time of the sale of this sugar that the plaintiff was a "soda manufacturer," that is, a manufacturer of beverages, and in the manufacture of such beverages used granulated sugar in the preparation of filtered syrups. See *Laplante v. Warren Cotton Mills*, 165 Mass. 487, 489. A letter dated July 5 from the plaintiff to the defendants, introduced in evidence by the defendants, stated with reference to a

car load of sugar previously shipped from the defendants' refinery, ". . . we find that this car of sugar has a lot of dirt. It is full of fine black specks and clogs our filters more than ever. We have had a hard time to filter the syrup and when you look right into the syrup you can see something that looks like black soot. We will appreciate it very much if you will advise us what we can do with this sugar. A week ago we asked . . . the broker, to place a car of sugar with you, which he did. We trust that this next car will not be in the same condition as the last car. We are writing . . . [the broker] today instructing him to ship the next car at once and we hope you will see that there won't be any dirt in it as we shall have to return it if there is." The inference was warranted that this letter was received by the defendants before they delivered to the carrier the car load of sugar now in controversy, and that the plaintiff's order was not accepted by them before they received this letter.

It could be found on this evidence that before any sale, or contract of sale, was made by the defendants the plaintiff made known to them, by implication if not expressly, the particular purpose for which the sugar was required — the manufacture of syrups for use in making beverages — and relied on the defendants' skill and judgment to furnish fine granulated sugar, reasonably fit for this purpose so far as the absence of foreign matter was concerned. G. L. c. 106, § 17 (1). *DePasquale* v. *Bradlee & McIntosh Co.* 258 Mass. 483, 488. *Blanchard* v. *Kronick,* 269 Mass. 464, 465; *S. C.* 277 Mass. 31. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379. *Griffin* v. *Metal Product Co.* 264 Penn. St. 254. *Manchester Liners, Ltd.* v. *Rea, Ltd.* [1922] 2 A. C. 74. See *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251, 254–255. *Gossler* v. *Eagle Sugar Refinery,* 103 Mass. 331, specially relied upon by the defendants, was decided on the ground that the buyer did not rely on the judgment of the seller. In *Wilson* v. *Lawrence,* 139 Mass. 318, and *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227, also relied upon by them, there was no evidence that the goods were bought for

any particular purpose other than ordinary resale. See also *Standard Rice Co. Inc.* v. *P. R. Warren Co.* 262 Mass. 261, 265–266.

The judge could find that the warranties in the present case went beyond warranties that the sugar met the description of fine granulated sugar (see G. L. c. 106, § 16), and, with its defects known, was salable as fine granulated sugar, because reasonably fit for the general purposes for which such sugar is usually sold, that is, was of merchantable quality. G. L. c. 106, § 17 (2). See *Parker* v. *S. G. Shaghalian & Co. Inc.* 244 Mass. 19, 21; *Snelling* v. *Dine,* 270 Mass. 501, 510. Williston, Sales (2d ed.) §§ 235, 243. The rule that a warranty of fitness is not implied where a specified article is sold "under its patent or other trade name" (G. L. c. 106, § 17 [4]) is inapplicable since the judge was justified in concluding that the words, "fine granulated," as applied to sugar, are words of description and not a patent or trade name within the meaning of the sales act. An implied warranty that goods sold by description shall correspond therewith does not preclude a warranty of fitness for a particular purpose, if goods so described may be reasonably fit for that purpose, though exactness of definition tends to rebut evidence of the buyer's reliance on the skill or judgment of the seller. We cannot say as matter of law that the words, "fine granulated," so exactly define the sugar bought by the plaintiff as to control the evidence of reliance upon the defendants' skill and judgment to furnish sugar within this description reasonably fit for the plaintiff's purpose. See *West End Manuf. Co.* v. *P. R. Warren Co.* 198 Mass. 320. Williston, Sales (2d ed.) § 236, and cases cited. As, however, the plaintiff ordered fine granulated sugar and to that extent made its own decision without reliance on the skill or judgment of the defendants, the warranty of fitness did not extend to a warranty that sugar of that description would make good syrup.

2. The defendants properly do not contend that there was no implied warranty of merchantable quality. G. L. c. 106, § 17 (2).

3. The evidence warranted findings of breaches by the

defendants of the warranties of fitness and of merchantable quality.

It was found that the sugar contained foreign matter including insects, but that "the insects were not in the sugar when it was delivered by the defendants to the carrier" and, consequently, that the defendants "committed no breach of any warranty because of the presence of insects in the sugar." It was found, however, that the sugar in question when delivered by the defendants to the carrier contained foreign matter other than insects "in excessive quantity, or quantity more than was reasonably to be expected," and that "sugar containing this foreign matter," "apart from the presence of insects, insects' eggs, and parts of bodies," and "syrup made from it by the cold process, . . . [were] not fit for human consumption."

The evidence of a chemist who reported upon the sugar, taken with the other evidence in the case, justified these findings. The evidence that the plaintiff, before the examination of the sugar by the chemist, complained only of the presence of insects therein, and the testimony of the plaintiff's witnesses tending to minimize the extent and harmful character of the other foreign matter in the sugar, did not preclude the judge from making these findings. In view of the contradictory nature of the evidence the plaintiff was not bound by this testimony of its witnesses unfavorable to its case. The testimony did not have the effect of an admission and the evidence as a whole was open to more than one construction. *Whiteacre* v. *Boston Elevated Railway*, 241 Mass. 163, 165–166. *Boni* v. *Goldstein*, 276 Mass. 372, 376. Since the evidence of identification of one of the samples of sugar was somewhat meagre, we cannot say that it was error for the judge to exclude the question, asked of the defendants' assistant superintendent, whether this sample was "good merchantable sugar."

From the findings quoted and the evidence the judge could properly conclude that the sugar delivered to the plaintiff was not of merchantable quality and was not fit for the particular purpose for which it was bought.

4. No reversible error of law is disclosed in the matter of waiver.

The judge found, in substance, that there was no waiver of any breach of warranty by the payment by the plaintiff for the car load of sugar or by the use by it of eleven barrels of such sugar, but that there was a waiver of the breach of warranty of fitness of the four barrels used by it after it knew that the sugar contained an excessive quantity of foreign matter other than insects.

There was evidence that the entire car load was paid for by the plaintiff on July 13, 1928. The judge made the following findings, which the evidence warranted: "The sugar arrived in Springfield July 9, 1928, and on the same day was placed in the plaintiff's store room in its factory. Within a day or two some of the barrels were opened, and the plaintiff discovered in the folds of the paper that lined barrels, and to some extent in the sugar itself, a number of tiny insects, or beetle-like bugs, both alive and dead. The plaintiff's agent also noticed black specks in the sugar. A sample of the sugar containing bugs was immediately sent to the defendants with a complaint about the bugs only, and an inquiry what the defendants were going to do about it. Without waiting for a reply, or making any further examination of the sugar at that time, the plaintiff, on the day the barrels were first opened, emptied the contents of eleven barrels into its melters and converted the sugar into syrup. The syrup was made with cold water. It is filtered through cloth bags, to withhold foreign matter which is always found to some extent, in such sugar. The residuum in the filter bags on this occasion, however, was larger than refiners and consumers of sugar expect to find, and the plaintiff a few days later sent a sample of the unmelted sugar, to its own chemist for examination. Although the residuum was seen to contain bodies of beetles, and parts of bodies, and other foreign matter in more than the usual amounts, the plaintiff on the day the sample of sugar was submitted to its chemist, viz., July 16, emptied the sugar from four more barrels into the melters." On July 19, 1928, the plaintiff's chemist

reported that he had found insects and other foreign matter in the sugar, some of the foreign matter, other than the insects, being found "only by the aid of the microscope," and the plaintiff "on hearing from its chemist notified the defendants of what the chemist found in the sugar, and that it would not accept the remainder of the sugar. The plaintiff had paid for the entire car load before it knew just what the sugar contained."

Payment for the car load of sugar under these circumstances did not amount to a waiver of any breach of warranty. The conclusions of the judge, moreover, that the "foreign matter other than insects constituted a latent defect," that the plaintiff "had a right to rely to some extent at least upon the assumption that such foreign matter was not present in the sugar in excessive quantities," and that "in converting the first eleven barrels of sugar into syrup the plaintiff did not waive its right to damages for breach of warranty not reasonably discoverable until the syrup had gone through the filters" were justified. Nothing in the evidence or in the subsidiary findings required the ultimate finding that the defendants' burden of proof of waiver of breach of warranty of the eleven barrels of sugar had been sustained. The plaintiff's complaints to the defendants could be found to have been sufficient notice of such breach. It appears that the complaint made after the chemist's report was received was not limited to insects. G. L. c. 106, § 38. *Nashua River Paper Co.* v. *Lindsay,* 242 Mass. 206.

We cannot say that the judge's finding as to the other four barrels of sugar, that the plaintiff in melting them into syrup "after it had reason to know that there was an excessive quantity of foreign matter, other than insects, in the sugar . . . waived or is estopped from asserting any right it might or would otherwise have had to claim damages for breach of an implied warranty of fitness for a particular use," was not warranted. Since the result is the same in either case we need not consider whether the effect of this finding, properly construed, is that the breach of the implied warranty of fitness was waived or that the

conduct of the plaintiff prevents recovery of damages for the use of this sugar after the plaintiff had reason to know of the presence therein of an excessive quantity of foreign matter.

5. The defendants contend that the contract was rescinded by the return of one hundred four barrels of sugar by the plaintiff and payment therefor by them and, therefore, under the express provisions of the sales act, no other remedy could be granted to the plaintiff. G. L. c. 106, § 58 (1) (d), (2). This contention fails.

It was found that the plaintiff, on hearing from its chemist on July 19, 1928, that the sugar contained insects, insects' eggs, and parts of insects' bodies and other foreign matter, "notified the defendants of what the chemist found in the sugar, and that it would not accept the remainder of the sugar," that the "plaintiff had paid for the entire car load before it knew just what the sugar contained," that the defendants after examination of the sugar "requested the plaintiff to ship back to the defendants, the one hundred four barrels not used . . . and upon the reshipment . . . the defendants paid the plaintiff the contract price." The judge concluded "that the virtual rescission of the contract as to one hundred four barrels was not intended by the parties to affect any right the plaintiff might have to damages for breach of any warranty in the sale of the sugar not returned."

The conclusion stated is to be taken to mean that there was not a technical rescission of the sale, but rather that there was an independent adjustment of differences between the parties with respect to the one hundred four barrels of sugar returned by the plaintiff, leaving the matter of the other sixteen barrels for further settlement. The evidence supports the subsidiary findings and this conclusion. Consequently the ruling that "This contract was rescinded and the plaintiff cannot recover," requested by the defendants, was refused rightly. The ruling requested by them that "This was an entire contract. It could not be accepted in part and rescinded as to the other part," even if a correct statement of law, was immaterial in view of the facts found, and refusal so to rule did not harm the defendants.

6. The plaintiff and the defendants attack the rulings on damages. We find in them no error.

The judge found that the contract price of the sugar represented the value it would have had at the time of delivery to the plaintiff if it had answered to the warranty of merchantable quality. There is no controversy as to this finding or as to the amount of the contract price. The defendants concede that the measure of damages applied in the case of five barrels, being the excess of such contract price over the actual value of the sugar, was correct, if there was liability. See G. L. c. 106, § 58 (7). The judge found the damages as to the other eleven barrels to be the amount of the contract price, but the defendants contend that these damages should be measured in the same way as the damages in the case of the five barrels. Against the defendants' contentions the plaintiff urges as the measure of damages the cost of the product made from the fifteen barrels of sugar and prospective profits thereon. The plaintiff makes no contention in regard to damages as to the barrel of sugar from which samples were taken.

The rule laid down in the sales act is that the "measure of damages for breach of warranty shall be the loss directly and naturally resulting, in the ordinary course of events, from such breach," that in case of "breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, shall be the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if answering to the warranty," but that nothing in the act "shall affect the right of the buyer . . . to recover . . . special damages in any case where by law recoverable." G. L. c. 106, § 58 (6), (7); § 59.

As to four barrels of sugar used the judge found in effect, though not in terms, that there were no "special circumstances showing proximate damage of a greater amount" than the difference between the actual value of the sugar and the value it would have had if answering to the warranty. We cannot say that this conclusion was wrong. This sugar was used, as the judge found, after the plaintiff

"had reason to know that there was an excessive quantity of foreign matter, other than insects, in the sugar." Loss resulting from use of the sugar after the plaintiff had reason to know that it contained an excessive quantity of foreign matter would not ordinarily, if ever, be included in damages recoverable. *Gascoigne* v. *Cary Brick Co.* 217 Mass. 302, 305. At least it could be found that such loss did not result "directly and naturally . . . in the ordinary course of events" from the breach of warranty, but that the causal relation was broken by the intervening independent act of the plaintiff. Compare *Panagotopulos's Case*, 276 Mass. 600, 605, 607–608. The usual rule of damages, therefore, was applicable.

As to the other eleven barrels of sugar used, special circumstances were found showing damage greater than the difference between the value of the sugar when delivered and its value if answering to the warranty. It was found that the "natural and probable consequence of the defendants' breach of the implied warranty of fitness for a particular use . . . attached to the eleven barrels of sugar used before the breach was discovered, was the loss of the syrup made from that sugar," and that "The syrup, if it had been fit for use in the manufacture of beverages, would have had a value equal to the cost of the sugar, plus the cost of converting it into syrup." (The record shows that "cost of the sugar" was used as the equivalent of its value if answering to the warranty.) The damages recoverable for a breach of warranty are those which result from the breach and "may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result" thereof. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 445–446. See also *Hanson & Parker, Ltd.* v. *Wittenberg*, 205 Mass. 319, 327; *Hawkins* v. *Jamrog*, 277 Mass. 540, 543, and cases cited. Since the sugar was warranted to be fit for the manufacture of beverages it could be found that the parties contemplated that the damages for breach of such warranty would be the value of the product lost by reason of the use of this sugar in its manufacture. As the syrup made from the sugar in

question "apart from the presence of insects, insects' eggs and parts of bodies" therein, was not fit for human consumption the finding that the loss of the syrup resulted from the breach of warranty of fitness was justified. This conclusion is not dependent upon the finding that the "beverages manufactured from the sugar spoiled, and had to be dumped," and consequently is not vitiated by the finding that the cause of the spoiling of the beverages is conjectural. It was found, however, that "when the syrup had been filtered, the presence of an excessive amount of foreign matter other than insects was apparent in the residuum," but that the plaintiff "continued without delay to complete the manufacture of the syrup into beverages and to bottle and prepare them for sale," and in "so doing it acted at its own risk." It could be found that the loss of the beverages made under these circumstances — like the loss of the syrup made from the four barrels of sugar — did not result "directly and naturally . . . in the ordinary course of events" from such breach. *Gascoigne* v. *Cary Brick Co.* 217 Mass. 302, 305. Therefore it cannot be said that the judge adopted a wrong measure of damages as to this sugar.

The judge states that he is "unable to determine on the evidence what the cost was of converting eleven barrels of sugar into syrup, and . . . [is] therefore compelled to find that the only damage the plaintiff has proved by reason of breach of warranty of fitness as to the eleven barrels, was their cost, or as the sales act puts it, the value they would have had if they had conformed to the warranty." This statement is in the nature of a finding of fact and is conclusive upon us. Even if, as we do not decide, the record discloses evidence which would support a finding of the cost of converting such sugar into syrup, the judge was not required to accept such evidence as true.

The defendants contend that the plaintiff has not proved any damages because it has not proved the value of the sugar without the insects — for which the defendants were not responsible — but with the other foreign matter. As, however, the judge found that such excessive quantity of foreign matter rendered the sugar and the syrup made from

it unfit for human consumption, we cannot say as matter of law that he could not reasonably infer that no further reduction in value resulted from the presence of the insects.

Since, for the reasons stated, the plaintiff is not entitled to recover the value which the beverages made from the fifteen barrels of sugar used would have had if they had been salable, or the cost of producing them, it is not entitled to recover profits which would have resulted from sale of such beverages. The plaintiff makes no contention that it is entitled to recover any other prospective profits. There is no evidence of loss of business or of customers.

On the issue of damages evidence was introduced of the quantity of beverages manufactured from the sugar in question and the cost of manufacturing such beverages. In view of the judge's findings this evidence did not harm the defendants and the refusal to strike it out upon their motion is not reversible error.

7. The defendants' motion for a finding for them was denied rightly. The plaintiff's and the defendants' exceptions to rulings and refusals to rule and the defendants' exceptions to the admission and exclusion of evidence are disposed of by what has been said. Further discussion of specific exceptions is unnecessary. We find no reversible error in the conduct of the trial.

*Plaintiff's exceptions overruled.*
*Defendants' exceptions overruled.*