## BOYCE v. FOWLER.
### Civ. No. 8227.

United States District Court
D. Massachusetts.

Dec. 30, 1949.

Robert W. Meserve, Nutter, McClennen & Fish, Boston, Mass., for plaintiff.

Jacob S. Aronson, Boston, Mass., for defendant.

WYZANSKI, District Judge.

The principal issue in the case at bar concerns the damages recoverable by one jobber from another on account of breaches of warranty. The governing principles are set forth in the Massachusetts Sales Act, Mass.G.L.(Ter.Ed.) c. 106, §§ 58(6), 58(7) and 59. These sections provide:

§ 58(6) "The measure of damages for breach of warranty shall be the loss directly and naturally resulting, in the ordinary course of events, from such breach.

§ 58(7) "In case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate

damage of a greater amount, shall be the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if answering to the warranty.

§ 59 "Nothing in this chapter shall affect the right of the buyer or of the seller to recover interest or special damages in any case where by law recoverable, or to recover money paid where the consideration for the payment has failed."

Most of the facts have been found by a special verdict of the jury, annexed hereto as an appendix. In accord with Federal Rules of Civil Procedure, Rule 49(a), 28 U.S.C.A., other facts, consistent with the jury's verdict but not necessarily covered thereby, are found by the Court in the following 12 numbered divisions.

### Findings of Fact

F. 1. Boyce, a jobber, bought from Fowler, another jobber, 600 work benches at $8.20 each to be delivered in Boston to a carrier for shipment to Boyce's customers. Fowler expressly warranted that the benches were of first quality and according to sample. Fowler anticipated that Boyce would resell the benches with similar warranties to retailers or jobbers. Fowler was aware that if these warranties should be broken Boyce would be presented with claims by customers, would lose profits, would have to take back benches and would suffer a loss of good will. Boyce paid Fowler for the goods.

F. 2. Boyce resold the benches, 300 to Macy and 300 to Tools for Fun, Inc., at $8.50 each to be delivered in Boston to a carrier for shipment. In making these resales Boyce repeated Fowler's warranties as well as another warranty not now material. Macy and Tools for Fun, Inc., paid Boyce. Tools for Fun, Inc., resold some of its benches to retailers in Philadelphia and Chicago.

F. 3. If the benches had answered to the warranties that Fowler gave, they would have been worth in Boston at the time of delivery $9 each or $5,400 for the lot. In fact the benches substantially failed to answer to these warranties. As shipped in Boston they were worth $5.30 each or $3,180 for the lot.

F. 4. Boyce gave Fowler notice of the breach of warranty within a reasonable time.

F. 5. Macy presented Boyce with a claim for $1,841.23, comprising $1,020 for repairing defective benches, $26.23 for missing parts, $420 for freight and trucking— including apparently charges for carrying benches to repair them and to repossess them from Macy's dissatisfied customers— and $350 for markdowns on 75 benches sold to Macy's customers. Macy also demanded that Boyce retake 30 unsold benches and "send * * * check in payment therefore [sic]".

F. 6. Tools for Fun, Inc., presented Boyce with a claim for $2,324.61, comprising items with respect to 4 defective benches which Tools for Fun, Inc., had not sold, 70 defective benches it had sold and taken back from a Philadelphia retailer and 61 defective benches it had sold to a Chicago retailer and which that retailer contemplated returning. As to each of these 135 benches Tools for Fun, Inc., specifically asked to recover its original cost of $8.50, its anticipated profit of $2.25, and certain costs of handling and improving the merchandise. Tools for Fun, Inc., also demanded that Boyce retake an additional 10 benches alleged to be defective.

F. 7. In answer to question 4(b) put by the Court the jury answered that Boyce will be "required to pay R. H. Macy & Co. and Tools for Fun, Inc. in order to settle with them for any expenses they have incurred and any loss of profits they have suffered * * * on account of breaches of warranty * * * in connection with the benches Macy's [sic] and Tools for Fun, Inc. bought from Boyce and sold to their customers" $3,100.84.

F. 8.(a) The precise construction of the Court's question 4(b) and the jury's answer recited in the preceding finding presents difficulties. Read literally, as a jury verdict should be, the finding covers only the 556 benches Macy or Tools for Fun, Inc., had sold to customers. That is, it covers the 270 benches which Macy sold

its customers; the 155 benches which Tools for Fun, Inc., sold to retailers which they resold; and the 131 benches which Tools for Fun, Inc., sold to retailers but which have been returned or offered back to Tools for Fun, Inc., by those retailers. It would therefore not cover the 30 benches which Macy never sold but still has on hand, or the 4 defective benches which Tools for Fun, Inc., listed as unsold in Schedule A of Ex. 36, or the 10 other defective benches which Tools for Fun, Inc., had neither sold nor listed.

(b) To settle the claims with respect to the 30 benches, unsold by Macy, the Court finds that Boyce will have to pay Macy only the price Macy paid Boyce, namely $8.50 per bench or $255 for the lot. [See third sentence from the end of Ex. 35.]

(c) To settle the claims with respect to the 4 defective benches listed in Schedule A of Ex. 36 Boyce will have to pay Tools for Fun, Inc., $58.96.

(d) To settle the claims with respect to the 10 defective benches not listed and apparently not improved by vises and the like, Boyce will have to pay Tools for Fun, Inc., only the price Tools for Fun, Inc., paid Boyce, that is $8.50 each or $85 for the 10.

(e) Each of the settlements just referred to would be a reasonable settlement, but each of these settlements like the main settlement with Tools for Fun, Inc., contemplates the return to Boyce of the defective benches. Thus, when he makes his settlements, Boyce will have the right to receive in New York from Macy 30 benches and from Tools for Fun, Inc., 4 lots of respectively 4, 10, 70 and 61 benches. This makes a total of 175 benches. This is in accord with the answer rendered by the jury to special question 4(a) (1).

(f) The Court finds that when Boyce receives these 175 benches in New York they will be in much worse condition than the average bench was in Boston at the time of Fowler's sale of 600 benches to Boyce. The 175 benches will be the benches of poorest quality among the 600. They will have been damaged by shipment. They will show signs of having been rejected.

Their value as a lot (even taking into account that some have vises) will be only $3 each in Boyce's hands in New York or a total of $525.

F. 9. If Fowler pays Boyce the $3,100.84 referred to in finding 7 and Boyce uses that sum to settle the claims of Macy and Tools for Fun, Inc., for the benches they sold to customers, Fowler will in effect be the purchaser of the benches at a rate that gives Boyce and his subvendees their full profits. Boyce in connection with these particular benches will with one exception be put in precisely the position for which he bargained and will have retained all the foreseeable profits and avoided all the foreseeable losses (aside from loss of reputation.) The exception is that Boyce will be better off than he anticipated because he will have received back from Tools for Fun, Inc., 131 benches which it had sold to customers and which are worth in New York $3 each.

F. 10. If Fowler pays Boyce $255 to settle with Macy for the 30 benches referred to in finding 8(b) and $85 to settle with Tools for Fun, Inc., for the 10 benches referred to in finding 8(d), Fowler will in effect be the purchaser of the benches at a rate that gives Boyce his full profits. Boyce will be in precisely the position for which he bargained except that he will have on his hands 40 benches which are worth $3 each.

F. 11. If Fowler pays Boyce $58.96 to settle with Tools for Fun, Inc., for the 4 benches referred to in finding 8(c), Boyce with one exception will be in precisely the position for which he bargained and will have retained all the foreseeable profits and avoided all foreseeable losses (aside from loss of reputation). The one exception is that Boyce will be better off than he anticipated because he will have on hand 4 benches which are worth $3 each.

F. 12. As a consequence of Fowler's breach of warranty Boyce sustained, as the jury found, a $1,200 loss of good will.

### Conclusions of Law

C. 1. Since the place for the performance of the contracts between Fowler and Boyce and those between Boyce and

his subvendees was Boston, the law of Massachusetts governs the damages. Meyer v. Estes, 164 Mass. 457, 465, 41 N.E. 683, 32 L.R.A. 283; Restatement, Conflict of Laws, § 358.

C. 2. The least to which Boyce is entitled is so-called normal contractual damages, that is the difference between the value of the benches at the time of their delivery to Boyce in Boston and the value they would have had if they had answered to Fowler's warranties. Mass.G.L.(Ter. Ed.) c. 106, §§ 58(6) and 58(7); Brown v. Bigelow, 10 Allen, Mass., 242; 3 Williston Sales (Rev.Ed.1948) § 613. In the case at bar these damages would be $2,220 plus interest.

C. 3. But since in this case Boyce and Fowler made their contract in the light of the special circumstances that Boyce was a jobber buying for immediate resale and that he was expected to sell with warranties similar to those given by Fowler to him, and since an average man would foresee that if those warranties should be broken, Boyce's customers would probably claim damages (including costs of repairing benches, costs of moving them and loss of profits anticipated by Boyce's customers) and Boyce himself would probably have to take benches back, might lose profits on some of them and would lose the good will of potential customers, Boyce is entitled to recover as special damages losses of the foregoing foreseeable types which Boyce has sustained or will sustain as a consequence of Fowler's breach. Mass.G.L. (Ter.Ed.) c. 106, §§ 58(6), 58(7) and 59. Royal Paper Box Co. v. Munro & Church Co., 284 Mass. 446, 453, 188 N.E. 223; Hadley v. Baxendale, 9 Ex. 341; Kasler and Cohen v. Slavouski [1928], 1 K.B. 78.

C. 4. Of the foregoing types of special damage the one that is the easiest to calculate in this case is the $1,200 loss of good will which Boyce sustained on account of Fowler's breach. Boyce is entitled to recover this $1,200. Hawkins v. Jamrog, 277 Mass. 540, 179 N.E. 224, 79 A.L.R. 979.

C. 5. It takes somewhat more subtlety to deal with the aspect of special damage which arises out of the claims of Macy and Tools for Fun, Inc., against Boyce.

C. 6.(a) It is well established that in special circumstances such as have been described in finding 1 and conclusion 3 a buyer is entitled to recover from his seller the amounts he must pay to effectuate reasonable settlements with subvendees on account of the failure of the goods to answer the warranties of the original seller. Royal Paper Box Co. v. Munro & Church Co., supra.

(b) It is immaterial that the buyer has not yet effectuated the settlements, provided such settlements are foreseeable, reasonable and subject to calculation. Buckbee v. P. Hohenadel Jr. Co., 7 Cir., 224 F. 14, L.R.A.1916C, 1001, Ann.Cas.1918B, 88; Randall v. Raper, El.B. & El. 84, 120 Eng.Rep. 438.

(c) It is immaterial that the buyer plans a settlement which will allow the subvendee a privilege (not accorded by the Sales Act) of keeping some of the defective merchandise, receiving compensation on account of that defective merchandise and returning other defective merchandise to the subvendor for full or partial credit. Country Club Soda, Inc., v. Arbuckle, 279 Mass. 121, 181 N.E. 256; Royal Paper Box Co. v. Munro & Church Co., supra.

(d) If the subvendor plans such a hybrid settlement with his subvendees and also seeks damages from his vendor, the subvendor has a duty to account to the vendor by way of set-off or otherwise for the value of the goods which the subvendees will return to the subvendor.

(e) The subvendor does not have an alternative legal right to require the original vendor to make a hybrid settlement with him and thus both pay money and take back goods. Mass.G.L.(Ter.Ed.) c. 106, § 58(2).

C. 7. The first transactions to be examined in accordance with the rules stated in conclusion 6 are the proposed settlements between Boyce and his subvendees Macy and Tools for Fun, Inc., on account of the benches which those subvendees resold to their customers. [See finding 7] The proposed settlements will require Boyce to pay the subvendees $3,100.84, will allow Boyce to recover 131 benches worth $393 and will allow Boyce to keep his original profits. Boyce is entitled to have Fowler pay him

the cost of that settlement ($3,100.84) less the actual value of the returned benches ($393) or $2,707.84. If Fowler pays $2,707.84 on account of these proposed settlements, Boyce will as to these benches be in exactly the position for which he bargained. He will have made his anticipated profits and recouped his actual and contemplated losses. To give him more in the form of so-called normal damages would be to put him in a better position than if Fowler had fulfilled his promise in the first instance. It would give the buyer a windfall of double recovery and would by the same token impose upon the seller a penalty of double damages.

C. 8. The second transaction to be examined in accordance with the rules stated in conclusion 6 is the proposed settlement between Boyce and Tools for Fun, Inc. on account of the 4 benches listed in Schedule A of Ex. 36 [finding 8]. The proposed settlement will require Boyce to pay Tools for Fun, Inc., $58.96, will allow Boyce to recover 4 benches worth $12 and will allow Boyce to keep his original profits. Boyce is entitled to have Fowler pay him the cost of that settlement ($58.96) less the actual value of the returned benches ($12) or $46.96. If Fowler pays that on account of this proposed settlement, Boyce will as to these 4 benches be in exactly the position for which he bargained. The reasoning is the same as in conclusion 7.

C. 9. The third transaction to be examined in accordance with the rules stated in conclusion 6 is the proposed settlement between Boyce and Macy on account of the 30 benches never sold by Macy [finding 8]. The proposed settlement will require Boyce to pay Macy $8.50 per bench or $255, but it will allow Boyce to recover 30 benches having an actual value of $3 each or $90. Boyce is entitled to have Fowler pay him $255 less $90 or $165.

C. 10. The fourth transaction to be examined in accordance with the rules stated in conclusion 6 is the proposed settlement between Boyce and Tools for Fun, Inc. on account of the 10 benches never sold by Tools for Fun, Inc., and *not* covered in Ex. 36 [finding 8]. The proposed settlement will require Boyce to pay Tools for

Fun, Inc., $8.50 per bench or $85, but it will allow Boyce to recover 10 benches having an actual value of $3 each or $30. As to these 10 benches Boyce is entitled to $85 less $30 or $55.

C. 11. The total of the items heretofore considered is as follows:

| | |
|---|---|
| Loss of good will [Conclusion 4] | $1200.00 |
| Allowance in connection with benches resold to subvendees [Conclusion 7] | 2707.84 |
| Allowance in connection with 4 benches [Conclusion 8] | 46.96 |
| Allowance in connection with 30 benches [Conclusion 9] | 165.00 |
| Allowance in connection with 10 benches [Conclusion 10] | 55.00 |
| | $4174.80 |

C. 12. Plaintiff is entitled to recover $4,174.80 with interest at 6% from the date of the complaint to the date of judgment.

C. 13.(a) The principles applied in the foregoing conclusions are in accord with the Massachusetts cases and other authorities when properly analyzed.

(b) In Royal Paper Box Co. v. Munro & Church Co., 284 Mass. 446, 188 N.E. 223, the buyer had bought cardboard from which to fabricate boxes for sale to the candy trade. When the boxes were shipped to the users, it developed that a disagreeable odor emanated from them, occasioned by the presence of certain algae in the New Jersey river water with which the original manufacturer had processed the cardboard. Many, though not all, of the subvendees returned the boxes to the plaintiff buyer, received from him a return of the purchase price and then instituted damage claims against the plaintiff. The court allowed the buyer to recover (1) cost of manufacture of defective boxes, which included cost of the cardboard, manufacturing expenses and the usual profit margin; (2) cost of disposing of the worthless product; and (3) damage claims of subvendees. The items of damage allowed by the court represented either compensation for out-of-pocket expenses incurred or to be incurred together with anticipated profits. There was thus no overlapping of damages in view of the fact

that at the time of the suit the subvendees had returned the defective goods and the buyer had disgorged his receipts from them. Moreover, even though the entire run of boxes was admittedly defective, no damages were allowed as to those boxes which were retained by subvendees without complaint.

(c) In Agoos Kid Co. v. Blumenthal Import Corp., 282 Mass. 1, 184 N.E. 279, the buyer bought a large quantity of goat skins and went to considerable expense in attempting to manufacture them. Nearly half the skins were rotten and the buyer's measure of recovery was held to be normal damages plus cost of attempted processing. There was no resale by the buyer so that his injury consisted of having on hand inferior skins and having expended money in attempting to fabricate them. Thus, only by the award of normal damages plus special damages for the expense of manufacture could the buyer be placed in the position which the seller had promised.

(d) In Country Club Soda, Inc., v. Arbuckle, 279 Mass. 121, 181 N.E. 256, the buyer bought sugar which it attempted to manufacture into syrup. The sugar was found to contain manifold impurities which rendered it unsuitable for human consumption, and the buyer was allowed to recover from the seller normal damages, and, had the evidence been sufficient to support the claim, would have been allowed to recover costs of attempted manufacture. Here again the goods remained in the hands of the original vendee who had not been able to pass on his loss to a subvendee. Also, had the evidentiary difficulty been surmounted, both elements of damages were necessary to render the buyer whole.

(e) In Parker v. S. G. Shaghalian & Co., 244 Mass. 19, 138 N.E. 236, the buyer bought candy, resold it to subvendees and, when it appeared to be of defective quality, took it back and refunded the purchase price. Since the plaintiff buyer had thus disgorged the profits once received, he was properly entitled to include anticipated profits as an element of damages.

(f) In Lissberger v. Kellogg, 78 N.J.L. 85, 73 A. 67, the plaintiff, a wool dealer in New York, bought by sample a shipment of wool from a dealer in Argentina. The wool was shipped directly to the plaintiff's subvendee in Cleveland, without inspection by the plaintiff. It did not conform to quality and the plaintiff was obliged to take it back from his Cleveland subvendee and transship it to Boston, where he resold it at considerably less than his cost. In a suit against the seller for breach of warranty, damages were allowed for: (1) the difference between the plaintiff's cost and the amount received by him on his distress sale; (2) loss of profits on the Cleveland sale; (3) damage claims of the Cleveland customer; and (4) extra freight on the wool shipped to Boston for resale. Upon the particular facts of the Lissberger case all these elements of damage were necessary to put the buyer in as good a position as he had been promised. If the seller had kept his warranty, the buyer would have recouped his costs and made a profit. As a result of the breach the buyer not only lost his anticipated profit and had to pay freight and damage claims but did not recoup his costs. In allowing the four items of damage the court did no more than put the buyer in the situation promised by his seller. There was not any question in the New Jersey case any more than in any of the Massachusetts cases just analyzed of giving a buyer a position better than he would have had if the seller had observed his warranty.

Judgment for plaintiff for $4,174.80 with interest of $196.22 or a total of $4,371.02.

## Appendix

1. At the time that Fowler delivered 600 benches to the transportation company in Boston, did a substantial number of them fail to measure up to the warranties Fowler gave Boyce? Yes.

2. If your answer to question 1 was Yes, then did Boyce give Fowler notice of his breach of warranty within a reasonable time? Yes.

3.(a) In October 1948 what was the fair value at wholesale in Boston of the 600 benches as a lot *actually delivered* in Boston by Fowler? $3,180.00

(b) In October 1948 what would have been the fair value at wholesale in Boston

of 600 benches as a lot *if they had answered to such warranties* as Fowler gave Boyce? $5,400.00

(c) What loss of good will, if any,—that is, what loss of *future* profits from customers on possible *future* transactions and what loss of reputation—did Boyce suffer as a consequence of Fowler's breach of warranty, if any? $1,200.00

4.(a) (1) How many benches, if any, will Boyce be required to take back from R. H. Macy & Co. and Tools for Fun, Inc., on account of breaches of warranty, if any? 175

(2) What profits had Boyce *already* earned on these benches? $52.50

(b) What amounts will Boyce be required to pay R. H. Macy & Co. and Tools for Fun, Inc., in order to settle with them for any expenses they have incurred and any loss of profits they have suffered, if any, on account of breaches of warranty, if any, in connection with the benches Macy's and Tools for Fun, Inc., bought from Boyce and sold to their customers? $3,100.84

(c) What loss of good will, if any,—that is, what loss of *future* profits from customers on possible *future* transactions and what loss of reputation—did Boyce suffer as a consequence of Fowler's breach of warranty, if any? $1,200.00

In connection with 3(a), (b), (c) and 4(a) (1), (a) (2), (b), (c) do not include interest.