INTER-STATE GROCER COMPANY *vs.* GEORGE WILLIAM BENTLEY COMPANY.

Suffolk.   November 21, 1912. — March 25, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Sale,* Implied warranty of identity, Parties.  *Words,* "Financing," "Held."

A contract to sell a certain number of cases of sardines, which contains no warranty of quality, whether it is made by a manufacturer or a dealer or by a casual owner, is a contract for the sale of merchantable sardines, and, if the goods delivered have no market value as sardines, the buyer is not bound to receive them, whether the defect that makes them unsalable is hidden or is discoverable by inspection.

Where one who held a warehouse receipt for certain goods in his own name transferred it to a buyer, issued shipping directions for the delivery of the goods, rendered a bill for them in his own name and received the purchase money, he can be found to have sold the goods as their owner, although he wrote to the buyer that he was "financing" shipments of the goods made by another person and that the order was to be shipped from the goods "held" by him.

CONTRACT for $1,354.97 paid by the plaintiff to the defendant for a certain number of cases of sardines alleged to have been unmerchantable, the first count of the declaration being based on an implied warranty that the sardines were merchantable, and the second count being upon an account annexed. Writ in the Municipal Court of the City of Boston dated July 23, 1909.

On appeal to the Superior Court the case was tried before *Fox*, J. The material facts shown by the evidence are stated in the opinion. At the close of the evidence the defendant asked the judge to make certain rulings, among which were the following:

"1. That upon all the evidence the plaintiff cannot recover.

"2. That upon all the evidence the plaintiff cannot recover, as it appears that the defect in these goods, if any, was a latent defect, and that the defendant was not the manufacturer or packer of the goods, and there is therefore no implied warranty of quality."

"5. If the jury find that the defendant was a pledgee of the sardines in question, then there was no implied warranty on the defendant's part as to the quality of the sardines, and the plaintiff cannot recover."

"7. If the jury find that the defendant was not the manufacturer or canner of the sardines in question and that the defect, if any, was a latent defect, then there was no implied warranty by the defendant as to the quality of the sardines, and the plaintiff cannot recover."

"9. The burden of proof is on the plaintiff to satisfy the jury that the defects, if any, in these sardines were not caused by the plaintiff's own failure to properly care for them after they were received.

"10. The burden of proof is on the plaintiff to satisfy the jury that the defects, if any, in these sardines were not the result of some cause which operated after the plaintiff received the sardines."

The judge refused to make these rulings and also refused to make other rulings requested numbered six and eight, as to which

the exceptions were waived. The judge, among other matters, instructed the jury as follows: "Where, as in this case, the order was sent out at arm's length from somewhere in the West to somewhere in the East for a certain number of cases of sardines, — the law imposes what is called an implied warranty that the goods, if it is food, that the article is fit for use as a food, and if it is merchandise, as this was, that it is merchantable, that the goods sold are merchantable; and what we mean by that is that they were salable at the time when they were sold to this plaintiff. That is the obligation, and the extent of the obligation, which rested upon the seller of these goods. If the Grocer Company wanted any further warranty than that, they should have called for it — called for an express warranty. All they got was the warranty — obligation that the law imposes upon the seller of such goods.

"Now, what do we mean when we say that the goods are fit for food? Why, if a man is selling bananas under this obligation that they should be fit for food, he does not incur any obligation that they should keep for three months in hot weather. The obligation is simply that they are fit for food at the time when they are sold, and 'merchantable' means that the goods are salable at some price in the market at the time when the goods are delivered to the buyer. That is the extent of the obligation resting on the sellers in this case."

After referring to facts which are stated in the opinion, the judge instructed the jury as follows: "Now, on those facts, gentlemen, you are warranted in finding — I do not say you are bound to find it — but you are warranted in finding that the Bentley Company and the Grocer Company were the contracting parties in this case, and the person to be sued for breach of any warranty, if there was any breach of warranty, was the Bentley Company."

The jury returned a verdict for the plaintiff in the sum of $927.45; and the defendant alleged exceptions to the refusal of the rulings requested by it and to a portion of the judge's charge including the paragraph last quoted.

*R. Ernst,* for the defendant.

*L. Marks,* (*R. B. Young* with him,) for the plaintiff.

RUGG, C. J. This is an action of contract to recover damages for an alleged breach of an implied condition of warranty that

certain canned sardines purchased by the plaintiff were merchantable. The plaintiff was a wholesale grocer in Missouri. In the summer of 1907 it placed an order with brokers in Missouri for five hundred cases of "$\frac{1}{4}$ oil sardines and 200 cases of $\frac{3}{4}$ mustard sardines." The broker sent the order to the Maddocks Packing Company, a corporation engaged in the business of packing sardines in Maine. That company had an arrangement with the defendant whereby it placed sardines as fast as packed in storage in a Portland warehouse, taking warehouse receipts in the defendant's name. The defendant upon delivery to it of the warehouse receipts advanced to the packing company a percentage of the value of the stored goods upon which advances the company paid interest. Orders received by the packing company for sardines were referred to the defendant for approval, and the proceeds of goods which were shipped from those on storage were paid to the defendant. On receipt of the plaintiff's order the packing company wrote to the defendant, with a request for shipping orders, so that the goods might be sent the following week. Thereupon the defendant, on November 29, 1907, wrote to the plaintiff as follows: "We are this season financing the shipments made by the Maddocks Packing Co., Boothbay Harbor, Me. They have turned over to us an order to be shipped from the goods held by us [then follows a description of the goods, with shipping directions and terms]. This order we understand was placed by Goodlett & Bolles, Kansas City. We expect this car will go forward sometime next week, and if our understanding of the matter is not perfectly correct wish you would promptly advise us."

On October 25, 1907, the brokers, Goodlett and Bolles, wrote to the plaintiff: "Your order for a car of sardines to be shipped December 1st is still somewhat up in the air and it is a many cornered deal. While the packers advise us that they have the goods, they have to go through a middleman in Boston." The goods were shipped and an invoice was sent in the name of the defendant to the plaintiff, and payment was made by the plaintiff to the defendant, which credited it on its account against the packing company. There was testimony from which it might have been found that the goods were not merchantable when delivered to the plaintiff. The sale here in question occurred before Janu-

ary 1, 1909, and hence is not governed by the sales act.  St. 1908, c. 237, §§ 14, 15, 16.

Upon the sale of goods, by name or description, in the absence of some other controlling stipulation in the contract, a condition is implied that the goods shall be merchantable under that name. They must be goods known in the market and among those familiar with that kind of trade by that description, and of such quality as to have value.  This is not a warranty of quality.  It does not require any particular grade.  It is a requirement of identity between the thing which is described as the subject of the trade and the thing proffered in performance of it.  The buyer is entitled to receive goods fairly answerable to the description contained in his contract of sale.  It does not matter whether the deleterious characteristic is latent or obvious, provided it goes to the extent of changing the nature of the goods, so that they have no value in the market under the designation contained in the contract of sale.  This is a general rule applicable alike to all, whether they be manufacturers or dealers or merely sellers.  It was declared early in this Commonwealth, and has been adhered to consistently.  *Mixer* v. *Coburn*, 11 Met. 559, *Gossler* v. *Eagle Sugar Refinery*, 103 Mass. 331, *Murchie* v. *Cornell*, 155 Mass. 60, *Alden* v. *Hart*, 161 Mass. 576, 580, *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474, *Hanson & Parker* v. *Wittenberg*, 205 Mass. 319, illustrate the principle in its application to sales by dealers, and *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52, *Swett* v. *Shumway*, 102 Mass. 365, *Wilson* v. *Lawrence*, 139 Mass. 318, *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 452, to sales by manufacturers.

This being the governing principle, it is of no consequence whether the seller is a manufacturer or not, or whether the defect is hidden or discoverable by inspection.  Upon a sale even by a casual owner of sardines, he is bound to deliver something which answers that description in the trade.  If he does not, he does not perform his contract.  *Gardner* v. *Lane*, 9 Allen, 492.  *Randall* v. *Newson*, 2 Q. B. D. 102, 109.  *Frost* v. *Aylesbury Dairy Co.* [1905] 1 K. B. 608, 613.  *Jones* v. *Just*, L. R. 3 Q. B. 197.  *Mody* v. *Gregson*, L. R. 4 Ex. 49, 55, 56.

This rule is quite apart from instances where the sale is of specifically defined goods, whether open to the inspection of the parties

or not, where the rule of *caveat emptor* governs. *Howard* v. *Emerson*, 110 Mass. 320. *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, 281. It is distinct also from a sale expressly or avowedly to the knowledge of both parties for a particular purpose, as to which another rule prevails. *Hight* v. *Bacon*, 126 Mass. 10. All these rules are different statements of the principle that a buyer has a right to get that which he has bought. They deal not with a warranty of quality but with a condition of the contract. They touch the identity of the subject with that tendered in performance of it. This principle also is quite separate from that frequently applied in purchases from manufacturers and sometimes from dealers, where the buyer relies upon the skill or knowledge of the seller, and there arises some sort of implied warranty of quality. If the goods in the case at bar were not salable for some price as sardines when they were delivered to the plaintiff, there was a breach of contract by the seller. There is nothing contrary to the propositions here laid down in *Dickinson* v. *Gay*, 7 Allen, 29. That was a case where the goods had some value, that is, they were merchantable as damaged goods, and this is shown by the finding of the jury. If there is anything inconsistent with this view in *Farren* v. *Dameron*, 99 Md. 323, and in *Howard Iron Works* v. *Buffalo Elevating Co.* 113 App. Div. (N. Y.) 562, affirmed without opinion in 188 N. Y. 619, we are not disposed to follow them. See cases collected in Williston on Sales, § 233, note. *McKinnon Manuf. Co.* v. *Alpena Fish Co.* 102 Mich. 221. *Reynolds* v. *General Electric Co.* 72 C. C. A. 23; 141 Fed. Rep. 551, and some other cases relied on by the defendant are distinguishable in their facts.

This case does not raise any question as to obligation of inspection upon receipt, or waiver by acceptance or recognition of goods in satisfaction of the contract, *West End Manuf. Co.* v. *Warren Co.* 198 Mass. 320, 325, and it is not necessary to discuss these points.

The character of the title of the vendor in this respect is immaterial. If he acts as vendor he is subject to the ordinary incidents of that relation. There is nothing inconsistent with this in *Baker* v. *Arnot*, 67 N. Y. 448. The sale in that case was made by the pledgor, to the knowledge of all parties to the transaction. The pledgee simply released his pledge, and transferred possession "in pursuance of a sale made by" his pledgor. He was not

the vendor. In the case at bar the charge well might have been more full with reference to the question whether the packing company or the defendant was the seller, and whether the latter was not in fact a pledgee. But the charge was concise and accurate. It was not susceptible of misconstruction, and cannot be said not to have fairly protected the rights of the defendant. There was some evidence that the defendant acted as owner in making the sale. The information conveyed in its letter to the plaintiff was not as matter of law notice that it was pledgee and not owner. It might have been "financing" the packing company by taking title to the goods stored, and goods "held" by it may have been held in the capacity of owner as well as of pledgee. The defendant's first, second, fifth and seventh requests for instructions were refused rightly. The sixth and eighth were waived properly at the argument.

While the substance of the defendant's ninth and tenth requests well might have been amplified in the charge, the refusal to give them was not error. The jury must have understood that the plaintiff, in order to prevail, was bound to prove that the goods were not merchantable at the time they were delivered to the buyer. This again was concise and correct, and cannot be said to have been inadequate.

The exception to the charge must be overruled. The chief ground argued in support of the exception to the charge is that the portion to the effect that the jury were "warranted in finding that the" defendant and the plaintiff "were the contracting parties," was too favorable to the plaintiff. It has been shown already that it could not have been ruled that the defendant was pledgee rather than vendor. The defendant held the warehouse receipt in its own name. This was at least the equivalent of possession of the goods. Other exercise of dominion over the property by the defendant, such as issuing shipping directions and the rendition of a bill in its own name to the plaintiff, were enough to support a finding that the defendant acted as owner in making transfer of the title to the plaintiff in such a way as to warrant the plaintiff in treating the defendant as owner. The defendant fails to show any harmful inaccuracy in the charge as a whole.

*Exceptions overruled.*