SMITH v. TATUM.

4-5556                                          131 S. W. 2d 619

Opinion delivered July 3, 1939.

Williams & Williams, for appellant.

Evans & Evans, for appellee.

GRIFFIN SMITH, C. J.   The defendants below were partners engaged in the mercantile business at Booneville as Tatum Hardware Company. It is alleged that in 1937 A. W. Tatum, a member of the partnership, sold certain seeds to the plaintiff; that such seeds were sold as certified ribbon cane seed; that they were so advertised and bore a trade label describing them as such; that the seeds were displayed in defendants' store "bearing placards and other written and printed matter describing them as certified ribbon cane seed; that A. W. Tatum stated definitely that they were certified ribbon cane seed, and that they were suitable for planting; that said A. W. Tatum warranted that they were as advertised; that they were suitable to plant to grow ribbon cane for making syrup; that plaintiffs relied upon said warranties as above set forth and purchased $2 worth; that the seeds were planted in soil adapted to and suitable for the cultivation of ribbon cane; that the plaintiffs worked and cultivated said crop in a prudent and careful manner; that when the crop was grown the seed did not produce ribbon cane, but grew johnson grass, broom corn, and many other kinds of noxious weeds and grass; . . . that plaintiffs harvested and hauled fifteen loads of the crop to the mill before they discovered it was worthless," and each plaintiff has been damaged in the sum of $400.

There was the following stipulation: "It is agreed for the purpose of making a test as to the law governing this case that the plaintiffs bought seed which bore the certificate of the State Plant Board to be ribbon cane seed, and that they bought them from the defendants for the purpose of planting. (2) That they did plant them to raise a crop of cane for syrup, and that the seed was not in truth pure ribbon cane seed and was not suitable for planting to raise ribbon cane for making syrup. (3) That the plaintiffs were damaged by reason of planting the seed, and that the damages were of a substantial nature."

Plaintiffs moved for a directed verdict on the proposition that the agreed statement showed substantial damages if the defendants were liable for breach of warranty, and that the cause be submitted to the jury for a determination of the amount of such damages. The defendants also moved for a directed verdict.

The court sustained the defendants' motion.

In *Kafauver* v. *Price*, 136 Ark. 342, 206 S. W. 664, a recovery by appellees was approved in circumstances somewhat similar to the instant case, dissimilarity being that in the Kafauver Case there was testimony in support of an express warranty, while in the case at bar (although such warranty is alleged in the complaint) the stipulation falls short of either an express or an implied warranty. In the Kafauver Case appellant was engaged in the grocery business at Rogers and sold seed as a part of his business. Appellees, farmers, purchased of appellant a quantity of sorghum seed for planting purposes. The seeds were sold as "orange sorghum seed," and were planted and cultivated, but "turned out to be a mixture of broom corn, kaffir corn, and milo maize seed, with perhaps a mixture of sorghum of some kind, and molasses could not be made out of the product."

One of the plaintiffs testified that he went to appellant's place of business and called for sorghum seed of the variety desired, and that appellant sold him the seed with the positive affirmation that they were orange sorghum seed; also, appellant said he would "stand behind

it." Appellant denied making any representations concerning variety of the seed, other than to sell them as sorghum seed.

In the opinion, written by Chief Justice McCulloch, it is said: "The rule of law seems to be very well settled by the authorities that a sale of seeds by description, where there is no opportunity for inspection, or where the identity is not distinguishable upon an ordinary examination, imports a warranty as to the particular kind of seeds, and that such a transaction falls within the general principle that a sale of chattels by description ordinarily imports warranty of the identity of kind. . . . There seems to be a contrariety of opinion as to whether or not a sale of seed imports a warranty of quality, but there is very little difference of opinion as to warranty as to the kind of the seed."

The rule approved by Chief Justice McCulloch was adopted by the court in 1918. In 1921 the so-called Pure Seed Law was enacted, with amendments in 1933 and in 1937. (§ 12370 of Pope's Digest, and succeeding sections.)

It is insisted by appellees that common law liability was superseded by the Pure Seed Act, which had for its purpose protection of buyers of seeds; therefore, it is urged, a cause of action does not accrue unless the seller makes representations additional to those which are necessarily implied from the fact of the sale of a commodity purchased in the open market by a retailer, without fault or negligence on his part, after such commodity has been inspected and certified by the state's agents and labeled in compliance with the law.

Although allegations of the complaint are that A. W. Tatum told one of the appellants the seeds were a certified ribbon variety, and that he warranted they were as advertised, the stipulation falls short of establishing either an express or an implied warranty. The language is: "The plaintiffs bought seeds which bore the certificate of the State Plant Board to be ribbon cane seed." There is no proof, other than this statement. In other words, there is no evidence that the containers in which the seeds were displayed did not bear the certifi-

cate in question. No express warranty having been proven, must we hold that the mere fact of a mistake on the part of the Plant Board, of which appellees had no knowledge, creates a liability for which appellees must compensate appellants? We think not.

Affirmed.