ANDREW BOTTI *vs.* VENICE GROCERY CO.

Suffolk.    April 10, 1941. — June 30, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Sale,* Warranty, Of food. *Food. Practice, Civil,* Ordering verdict; Requests, rulings and instructions; Variance; Exceptions: what questions open. *Pleading, Civil,* Variance.

Testimony by the plaintiff, at the trial of an action for breach of an implied warranty as to wholesomeness for food of macaroni sold him by the defendant, that in making the purchase he said "Give me . . . macaroni, that's all"; and that he told what kind of macaroni he wanted, and said he wanted "La Rosa macaroni," was not conflicting; and a finding was required that he asked for "La Rosa" macaroni.

Evidence warranted a finding that macaroni, sold to the plaintiff in a package and later "cooked," was unwholesome as food and caused him to be ill when eaten.

Upon evidence that the plaintiff asked of the defendant and was sold "La Rosa macaroni" and that it was unwholesome and caused him illness when eaten, the macaroni could have been found to have been of unmerchantable quality within cl. (2) of § 17 of G. L. (Ter. Ed.) c. 106, and the plaintiff was entitled to retain a verdict returned for him although in his declaration, by relying on an allegation that the selection of the macaroni was made by the defendant and that the defendant impliedly warranted it to be "wholesome and fit for human consumption," he apparently relied on cl. (1), upon which he was not entitled to recover, no question of variance having been raised at the trial.

The provisions of cl. (4) of § 17 of G. L. (Ter. Ed.) c. 106 do not preclude a finding of an implied warranty under cl. (2) where food, asked for and sold under a specified trade name, is unmerchantable because unwholesome.

Exceptions to the denial of a defendant's motion for a directed verdict and to the denial of his request that on all the evidence the plaintiff could not recover did not raise in this court a question of variance not raised at the trial.

CONTRACT. Writ in the Municipal Court of the City of Boston dated January 25, 1940.

The plaintiff's declaration alleged in substance that the defendant operated chain stores known as the Stella Chain Stores wherein it sold at retail groceries, including macaroni; that at one of these stores the plaintiff purchased packages of macaroni; that "the selection of said macaroni was made by the defendant's servants or agents; . . . that the defendant impliedly warranted that said macaroni was wholesome and fit for human consumption"; and that the plaintiff, eating thereof, became ill owing to its unwholesome condition.

Upon removal to the Superior Court, the case was tried before *Goldberg*, J., and a verdict was returned for the plaintiff in the sum of $100.

*P. S. Ratzkoff*, for the defendant, submitted a brief.

*G. Broomfield*, (*A. A. Giddon* with him,) for the plaintiff.

Cox, J. The jury returned a verdict for the plaintiff in this action of contract. There was evidence that the plaintiff purchased some packages of macaroni at one of the defendant's stores; that he ate some from one package

after it had been cooked; that it tasted "strong or bad"; that about an hour to an hour and a half later he became ill; that the macaroni was eaten "plain," with no sauce, tomatoes or paste; that he ate nothing else at the time but drank some coffee, and that his wife and three children, who also ate nothing but the macaroni, were also ill. The defendant's exceptions are to the denial of its motion for a directed verdict, and to the refusal of the trial judge to give the following requests for rulings: "1. On all the evidence the plaintiff is not entitled to recover. 2. The plaintiff has failed to prove by a fair preponderance of the evidence that the macaroni which was alleged to have been sold to him by the defendant was not fit for human consumption."

When the plaintiff was asked to tell what happened when he bought the macaroni, he testified that he went in, "I say, 'Give me three boxes macaroni,' that's all"; that he told what kind of macaroni he wanted, and said that he wanted "three boxes of La Rosa macaroni." The plaintiff contends that, upon this evidence, on the ground that his testimony was conflicting, the jury could have found that he did not ask for "La Rosa" macaroni. See *Tierney* v. *Boston Elevated Railway,* 216 Mass. 283, 286; *Bennett* v. *Fitzgerald,* 284 Mass. 535, 537. But we are of opinion that there is nothing inconsistent or contradictory in this testimony, and we think it follows from it that the plaintiff must be held to have asked for and purchased "La Rosa" macaroni. See *Dorman* v. *Worcester Consolidated Street Railway,* 277 Mass. 95, 96–98.

We think there was no error in the denial of the second request, although there was evidence from which it might have been found that there was practically no chance for the macaroni in question to be unfit for human consumption, and that if it were boiled for ten to fifteen minutes, that would kill any organism that might be present. Nevertheless, we are of opinion that the jury could have found, upon the plaintiff's testimony, that it was the unwholesome condition of the macaroni that caused his illness, *Johnson* v. *Kanavos,* 296 Mass. 373, 375, 376; *Flynn* v.

*Growers Outlet, Inc.* 307 Mass. 373, 376, 377, and, from other evidence, that he would not have been made ill unless the macaroni was unwholesome. It could have been inferred from evidence as to the ingredients of the macaroni, the method of manufacture and its preparation for sale in packages, that it ought not to be unwholesome and that it would not cause illness unless it were. The defendant contends that the plaintiff has not sustained the burden of showing that the macaroni was subjected to ordinary household cooking. See *Holt* v. *Mann,* 294 Mass. 21, 24; *Horton* v. *North Attleborough,* 302 Mass. 137, 143. It is true that if the jury had believed the evidence of a pathologist, called by the defendant, an inference might have been drawn that there was a possibility that organisms might be present in macaroni. Apart from this, it does not appear that cooking is necessary unless it is to make the macaroni palatable. But for that matter, the evidence discloses that the plaintiff's wife "cooked" the macaroni that was eaten. In the circumstances, we are of opinion that the inference reasonably could be drawn that she knew how to cook it.

The plaintiff, in his declaration, apparently relied upon the breach of the implied warranty under G. L. (Ter. Ed.) c. 106, § 17 (1), "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose." We are of opinion, however, that the plaintiff did not rely on the seller's skill or judgment. He asked for three packages of "La Rosa" macaroni. He received what he asked for. He made his own choice and used his own judgment. It may be assumed, from the facts that the jury could have found, that the transaction between the plaintiff and the defendant necessarily involved a purchase of food to be eaten, although nothing was said about the proposed use of the macaroni, *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90, 92; *Holt* v. *Mann,* 294 Mass.

21, 23–24. Although the customer ordinarily is bound to rely upon the skill and experience of the seller in determining the kind of goods in packages that he will purchase, this does not follow where he demands goods of a definite brand or trade name, in the absence of knowledge of the dealer that the goods are unsound or unwholesome. *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, 279–281. *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90, 92, 93. Furthermore, under said § 17 (4) there is no implied warranty as to fitness for any particular purpose in the case of a contract to sell or a sale of a specified article under its patent or other trade name. In the circumstances disclosed, it could not have been found that the choice of the macaroni was left to the defendant where, as here, it is apparent that the judgment of the defendant was superseded and the choice determined by the plaintiff. *Whitty Manuf. Co. Inc.* v. *Clark,* 278 Mass. 370, 375, 376, and cases cited. *Smith* v. *Denholm & McKay Co.* 288 Mass. 234, 242. *Ryan* v. *Progressive Grocery Stores, Inc.* 255 N. Y. 388, 390–391. Compare *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 383.

G. L. (Ter. Ed.) c. 106, § 17 (2) provides that "Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that they shall be of merchantable quality." We are of opinion that, although the plaintiff may not recover under said § 17 (1), for reasons already stated, he is not thereby necessarily precluded from recovering if a breach of the implied warranty under cl. (2) is made out. It is to be observed that, by the provisions of said cl. (2), the seller may be "the grower or manufacturer or not." In the case of *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227, the sale in question occurred before the adoption of the uniform sales act, but it was said of a sale of goods by name or description that, in the absence of some other controlling stipulation in the contract, a condition is implied that the goods shall be merchantable under that name. "They must be goods known in the market and among

those familiar with that kind of trade by that description, and of such quality as to have value. This is not a warranty of quality. It does not require any particular grade. It is a requirement of identity between the thing which is described as the subject of the trade and the thing proffered in performance of it. The buyer is entitled to receive goods fairly answerable to the description contained in his contract of sale. It does not matter whether the deleterious characteristic is latent or obvious, provided it goes to the extent of changing the nature of the goods, so that they have no value in the market under the designation contained in the contract of sale. . . . This being the governing principle, it is of no consequence whether the seller is a manufacturer or not, or whether the defect is hidden or discoverable by inspection. Upon a sale even by a casual owner of sardines, he is bound to deliver something which answers that description in the trade. If he does not, he does not perform his contract." (Page 231 and cases cited.) It is pointed out, at pages 231 and 232, that this rule is quite apart from instances where the sale is of specifically defined goods, whether open to the inspection of the parties or not, where the rule of *caveat emptor* governs, and that it is distinct also from a sale for a particular purpose or where the buyer relies upon the skill and knowledge of the seller. In *Friend* v. *Childs Dining Hall Co.* 231 Mass. 65, at page 71, it was said that "Food for immediate use which is not fit to eat is not merchantable as food." In *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251, the sale was of "Brazilian Washed Sugar" to be shipped from Brazil. It was there said, at page 254, that if the sale was governed by the provisions of G. L. c. 106, § 17 (2), there was an implied warranty that the sugar should be of merchantable quality, and that it "is implied in every contract of sale such as that here disclosed that the goods sold shall be merchantable under the name by which they are described." In *Country Club Soda Co. Inc.* v. *Arbuckle*, 279 Mass. 121, there was a sale of "fine granulated sugar." There was evidence that the particular purpose for which the sugar was required was made known before the sale,

and that the plaintiff relied upon the defendants' skill and judgment to furnish the described sugar. It was said, at page 128, "The defendants properly do not contend that there was no implied warranty of merchantable quality. G. L. c. 106, § 17 (2)." There were findings that the sugar contained foreign matter in excessive quantities, or quantities more than was reasonably to be expected, and it was held, at page 129, that the judge who tried the case could properly conclude that the sugar delivered to the plaintiff was not of merchantable quality and also that it was not fit for the particular purpose for which it was bought. We are of opinion that in the case at bar it could have been found that the macaroni in question was not of merchantable quality.

Clause (4) of said § 17 provides that "In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." We are of opinion, however, that the provisions of this clause do not preclude a finding that there was a breach of the implied warranty as to merchantability under cl. (2). Cl. (4) relates to a "fitness for any particular purpose." In the *Country Club Soda Co. Inc.* case it was held that the trial judge was justified in concluding that the words "fine granulated," as applied to sugar, are words of description and not a patent or trade name within the meaning of the sales act. This is not saying that, even if the description is a patent or trade name, the provisions of cl. (2) are inapplicable. It has been held that notwithstanding cl. (4) there is an implied warranty or condition of the merchantability of the goods sold according to trade name. *Parker* v. *S. G. Shaghalian & Co. Inc.* 244 Mass. 19, 22. *Raymond Syndicate, Inc.* v. *American Radio & Research Corp.* 263 Mass. 147, 153. *Snelling* v. *Dine,* 270 Mass. 501, 509. But apart from this, we think the mere fact that an article sold happens to have a trade name does not, in and of itself, bring the sale under cl. (4), but if it does, that the warranty contained in cl. (2) is not excluded. *Foley* v. *Liggett & Myers Tobacco Co. Inc.* 136 Misc. (N. Y.) 468, 473–474. Fitness for con-

sumption of food well may be equivalent to fitness for the particular purpose for which food may be bought, but it is also equivalent to fitness for the general purpose for which food is usually sold to the consumer. *Bencoe Exporting & Importing Co. Inc.* v. *McGraw Tire & Rubber Co.* 212 App. Div. (N. Y.) 136, 146–150.

It is to be observed that the sales act, in § 16, provides, among other things, that where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description, and that said § 17 (2) also contains the provision, hereinbefore quoted, relating to goods bought by description from a seller who deals in goods of that description. It would seem that § 16 refers to the implied warranty of identity (see *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227), and that cl. (2) of said § 17, embracing not only sellers who are growers or manufacturers, but also others, was inserted for the purpose of removing any question, if there were a question, as to implied warranty of merchantable quality where goods are bought by description. Before the adoption of the sales act, upon a sale of goods by name or description, there was a condition implied that the goods should be merchantable under that name, as already pointed out. See *Inter-State Grocer Co.* v. *George William Bentley Co., supra.*

The conclusion that the sale in question may come within the provisions of said § 17 (2) finds support in other jurisdictions. *Giant Manuf. Co.* v. *Yates-American Machine Co.* 111 Fed. (2d) 360. *Bencoe Exporting & Importing Co. Inc.* v. *McGraw Tire & Rubber Co.* 212 App. Div. (N. Y.) 136. *Foley* v. *Liggett & Myers Tobacco Co. Inc.* 136 Misc. (N. Y.) 468. *Ryan* v. *Progressive Grocery Stores, Inc.* 255 N. Y. 388. *Kelvinator Sales Corp.* v. *Quabbin Improvement Co. Inc.* 234 App. Div. (N. Y.) 96. *Ganoung* v. *Daniel Reeves, Inc.* 149 Misc. (N. Y.) 515. *Outhwaite* v. *A. B. Knowlson Co.* 259 Mich. 224. *Sperry Flour Co.* v. *De Moss,* 141 Ore. 440. *Dow Drug Co.* v. *Nieman,* 57 Ohio App. 190. *Keenan* v. *Cherry & Webb,* 47 R. I. 125. *Naumann* v. *Wehle Brewing Co.* 127 Conn. 44.   See *McNeil & Higgins Co.* v. *Czarnikow-Rienda*

*Co.* 274 Fed. 397; *Swift & Co.* v. *Aydlett,* 192 N. C. 330; Williston, Contracts (Rev. ed.) §§ 990, 1007–1009.

In the circumstances, there was no error in the denial of the defendant's motion for a directed verdict.

Although, as already pointed out, it seems that the plaintiff, by his declaration, relied upon a breach of an implied warranty arising under said § 17 (1), no question was raised at the trial of a variance between the pleadings and the evidence, and the general request of the defendant that on all the evidence the plaintiff is not entitled to recover, did not sufficiently raise that question. *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, 404. See *Pacheco* v. *Medeiros,* 292 Mass. 416, 419, 423. See also Rule 71 of the Superior Court (1932); *Carp* v. *Kaplan,* 251 Mass. 225, 227, 228.

*Exceptions overruled.*