## SMITH v. GREAT ATLANTIC & PACIFIC TEA CO.

### No. 13707.

United States Court of Appeals
Eighth Circuit.

Nov. 5, 1948.

Rex W. Perkins and G. T. Sullins, both of Fayetteville, Ark., for appellant.

E. L. McHaney, Jr., of Little Rock, Ark., (Thomas B. Pryor, Thomas Brady Pryor, Jr., G. Byron Dobbs, and Pryor, Pryor & Dobbs, all of Ft. Smith, Ark., and John M. Lofton, Jr., Grover T. Owens and Owens, Ehrman & McHaney, all of Little Rock, Ark., on the brief) for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

## WOODROUGH, Circuit Judge.

This appeal is taken to reverse a judgment for $6,495.87 in favor of plaintiff in an action for damages arising out of the sale of certain canned spinach by defendant to plaintiff. The contract for the sale originated in a telegram from defendant (doing business as Smith Canning Co.) to plaintiff A. & P. Tea Company, "Do you want 3300 cases standard twos spinach 1.10 Government Certificate", to which the Tea Company responded, "Will accept certificated spinach offered if last of February shipment okay advise if available our labels." A formal contract followed, by the terms of which the plaintiff bought and defendant sold 3600 cases 24/2 Iona Label Full Standard Spinach @ 1.10 dozen to be shipped in box cars each containing 1800 cases of 24 cans with Government Grade Certificate attached to invoice. The goods were shipped with inspection certificates from the United States Department of Agriculture attached to the bills of lading certifying the grades to be U. S. Grade C or U. S. Standard, and before issuing the certificates the inspector of the Department of Agriculture at Fayetteville, Arkansas, inspected the spinach by opening some of the cans in each lot (12 in one and 9 in the other), but it was not disclosed what tests were made by him. Plaintiff paid the price agreed on and resold some of the spinach but the remaining part was found on analysis to be unfit for human food because it contained "filth" consisting of plant lice of the genus known as aphis and was seized and condemned for that reason in libel proceedings under the Food and Drug Act, 21 U.S.C.A. § 301 et seq., to which both plaintiff and defendant were parties.

The trial court concluded that the defendant was liable to plaintiff for the breach of an "implied warranty that the spinach sold shall be of merchantable quality" and the judgment entered was for the proportionate amount plaintiff had paid for the part of the spinach seized and condemned and for freight, handling and storage paid by plaintiff in respect to that part. The court entered findings of fact and conclusions of law and a written opinion directing the judgment which are reported fully at 75 F.Supp. 156, 164. As the issues presented to and decided by the trial court are also clearly shown in the report, and it it accessible, we avoid needless restatement here by referring to it.

On the trial of the case the parties were in accord that the law controlling decision

is the law governing sales of personal property in Arkansas where the sale was agreed upon and performed and their contentions were related to the Uniform Sales Act which is in force in Arkansas as Act 428 of the General Assembly of Arkansas, 1941. The court applied subdivision 2 of § 15 of the Act to the stipulated facts as it found them in concluding that there was an implied warranty "that the goods shall be of merchantable quality" and that the warranty was breached when the goods "described" as spinach were determined to be unfit for food. It also concluded that the implied warranty was not "negatived" within the intent of Section 71 of the Act by reason of the agreement that the spinach to be shipped was certified U. S. Grade C or U. S. Standard. It concluded that the terms of the contract of sale were not inconsistent with the existence of the warranty implied under subdivision 2. Also that the libel proceedings and decree of condemnation were evidence of infestation and unfitness of the spinach within the time it was to be resold and the breach of the implied warranty.

## Opinion

On this appeal the contentions of the appellant in denial of implied warranty and breach thereof are in substance the same as he presented below to the effect that (1) the words of subdivision 2 of § 15 of the Act, "Where the goods are bought by description", are not applicable to the sale in question and that subdivision 1 of § 15 is the only applicable provision; (2) that by reason of the express agreement in the sale as to certification of the goods and compliance therewith the seller was relieved under subdivision 3 of § 15 of liability for implied warranty; (3) that the agreement as to certification "negatived" any implied warranty by reason of the provisions of section 71 of the Act; (4) that the decision and reasoning of the Supreme Court of Arkansas in Smith v. Tatum, 198 Ark. 802, 131 S.W.2d 619, precluded recovery by plaintiff, and (5) that the proceedings and decree of condemnation did not prove the unfitness of the spinach at the time of the sale.

On careful consideration it appears to us that each of appellant's contentions was met and resolved against appellant by the trial court in accord with permissible determination of Arkansas law.

▮ (1) Though there appears to be no case in which the Supreme Court of Arkansas has been called on since the State's adoption of the Uniform Sales Law to decide that where a dealer sells canned food there is an implied warranty that the product sold is merchantable as food—fit for human consumption—no reason is shown to anticipate that it would not so declare in view of the statute. In this case there is no question raised as to whether the spinach sold was of a particular grade and § 15 (1) of the Act is without application. It is undisputed that it was not fit for human consumption and was not salable as the food known as spinach. The court rightly held that the sale falls within the provisions of § 15 (2) of the Act and that the seller is liable upon the implied warranty that the goods should be of merchantable quality. Patrick Ryan v. Progressive Grocery Stores, Inc., 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339, relied on and quoted from by the District court clearly and fully elucidates the meaning and declares the applicability of those provisions to a case such as is shown by the facts herein as well as the irrelevance to such a case of § 15 (1). Additional cases are cited confirming that the Uniform Sales Law means that a seller who deals in food such as spinach impliedly warrants to one who buys spinach from him that the spinach shall be of merchantable quality—fit for human consumption—and that the seller is liable for breach of such warranty as follows: Jax Beer Co. v. Schaeffer, Tex.Civ.App.1943, 173 S.W.2d 285; Vaccarino v. Cozzubo, 1943, 181 Md. 614, 31 A.2d 316; Bob's Candy & Pecan Co. v. McConnell, 1943, 140 Tex. 331, 167 S.W. 2d 511; Botti v. Venice Grocery Co., 1941, 309 Mass. 450, 35 N.E.2d 491, 135 A.L.R. 1387; Country Club Soda Co., Inc., v. Arbuckle, 1932, 279 Mass. 121, 181 N.E. 256; Geisness v. Scow Bay Packing Co., 1942, 16 Wash.2d 1, 132 P.2d 740; W. R. Grace & Co. v. National Wholesale Grocery Co., Inc., 1925, 251 Mass. 251, 254, 146

N.E. 908; Griggs Canning Co. v. Josey, 1942, 139 Tex. 623, 164 S.W.2d 835, 142 A. L.R. 1424; Kansas City Wholesale Grocery Co. v. Weber Packing Corporation, 1937, 93 Utah 414, 73 P.2d 1272; Giant Manufacturing Co. v. Yates-American Machine Co., 8 Cir., 111 F.2d 360.

(2) § 15 (3) of the Act which may relieve a seller of goods from liability on account of the implied warranty which is created by subdivision 2, reads: "If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

Appellant argues in effect that because the offer and acceptance here disclosed was of spinach inspected and certified U. S. Standard Grade by the federal inspector, the inspector should be deemed the buyer's agent and that the case is therefore one in which "the buyer has examined the goods."

■ We do not think so. Nothing in the correspondence or contract indicated any intention of the Tea Company to designate the U. S. Marketing Service as its agent to examine the goods and the parties stipulated that neither of the parties know what tests were made by the inspector. But this court had occasion in Giant Manufacturing Co. v. Yates-American Machine Co., 8 Cir., 1940, 111 F.2d 360, to consider the meaning and intent of § 15 (3) of the Act. That was an action to recover the purchase price of coil units to be used by the buyer in air conditioning equipment. Although the buyer's agent went to the seller's plant and the coils were tested in his presence, it appeared that his examination was not such as ought to have revealed the leakage faults afterwards shown to have rendered the coils unmerchantable and we held the seller not relieved of liability by § 15 (3).

In Barrett Co. v. Panther Rubber Mfg. Co., 1 Cir., 1928, 24 F.2d 329, 336, the construction of subdivision 3 of § 15 of the Act was involved. The court said: "The tests bound the plaintiff only as to what was, or properly could have been, disclosed by reasonable testing. The testimony constrains us to find that there was nothing revealed by the tests or otherwise to indicate that after a lapse of time the goods sold would develop a bloom or other defect making the heels unmerchantable; that there was no defect discoverable by the exercise of ordinary experiments; that the defect was in fact not discovered until later by cobblers. Tests are not conclusive, one way or the other. In the case before us we find from the proofs that, after the tests, the buyer—the plaintiff—still had the right to rely upon the seller's judgment and skill, and in fact did so rely. Carleton v. Lombard, [Ayres & Co.], 149 N.Y. 137, 43 N.E. 422; Kellogg Bridge Co. v. Hamilton, 110 U.S. 108, 3 S.Ct. 537, 28 L.Ed. 86; Bierman v. City Mills Co., 151 N.Y. 482, 45 N.E. 856, 37 L.R.A. 799, 56 Am.St.Rep. 635. The evidence clearly shows that the plaintiff suffered damages by reason of the defendant's fault. What were the damages?"

■ The same conclusion follows on the facts here. Furthermore, § 14 of the Act applying to sales by sample as well as by description fully preserves the implied warranty by the seller of the merchantable quality of the goods, even if the federal inspector should be deemed the buyer's agent. Though the few cans of spinach examined by the inspector may not have contained aphis, the buyer would not be precluded from recovery on the warranty of merchantable quality of the spinach by the inspector's examination in the absence of any showing that the examination ought to have disclosed the infestation of the spinach. The defect was disclosed on analysis and there is no showing that it was otherwise apparent.

■ (3) As to the provisions of § 71 of the Act which permit a liability arising from implied warranty to be negatived or varied by express agreement, course of dealing or custom, we find nothing in the transaction here from which it could be inferred that there was any express agreement, course of dealing or custom to make the section applicable. The trial court's conclusion that the defendant canning company had no intention of selling spinach that was not merchantable and that the plaintiff Tea Company did not intend to buy a product that could not be resold to

the public for food, is in accord with the evidence, and there were no circumstances of the sale relieving the seller from the implied warranty.

■ (4) The decision of the Supreme Court of Arkansas in Smith v. Tatum, supra, was rendered before the adoption in the state of the Uniform Sales Law and can in no wise be regarded as interpretative of the present Act. It was rested in part upon the State Pure Seed Act, Pope's Dig. § 12370 et seq, and is without application to the present case.

■ (5) As to the sufficiency of the decree of condemnation to show the unfitness for food of the unsold part of the spinach remaining in plaintiff's possession at the time it was seized under the libel against it, we find no error in the ruling of the trial court that appellant was fully bound by the decree. He knew of the proceedings and appeared generally therein and cannot be heard to deny that the spinach was rightly ordered destroyed for unfitness. If, as he now suggests, the spinach may have been merchantable when it moved in interstate commerce and became unmerchantable afterwards, he could have raised the issue in the case. The spinach when opened and analyzed was found unfit and that is evidence that such was its condition when sold. American Soda Fountain Co. v. Medford Grocery Co., 1928, 128 Or. 83, 262 P. 939. It is not suggested that there was any possible way for the spinach to have become infested with the plant lice which rendered it "filthy" as adjudicated, except that the defect existed in some stage at the time of the sale.

We find no error in the judgment.

Affirmed.